1  A. Melvin McDonald, Bar #002298
   Linda K. Tivorsak, Bar #024789
2  JONES, SKELTON & HOCHULI, P.L.C.
   40 North Central Avenue, Suite 2700
3  Phoenix, Arizona  85004
   Telephone:  (602) 263-1700
4  Fax:  (602) 200-7847
   mmcdonald@jshfirm.com
5  ltivorsak@jshfirm.com

6  Mark D. Goldman
   GOLDMAN & ZWILLINGER PLLC
7  17851 North 85th Street, Suite 175
   Scottsdale, AZ  85255
8  Telephone:  480-626-8483
   Fax:  480-502-7500
9  docket@gzlawoffice.com

10 Attorneys for Defendant Joseph M. Arpaio

11              **UNITED STATES DISTRICT COURT**

12                 **DISTRICT OF ARIZONA**

13 United States of America,              NO. 2:16-CR-01012-SRB

14                          Plaintiff,    **Defendant Arpaio's Motion to**
                                          **Preclude Testimony of Timothy**
15         v.                             **Casey**

16 Joseph M. Arpaio,

17                         Defendants.

18

19         Defendant Joseph M. Arpaio moves to preclude the testimony of Timothy

20 Casey, former counsel for Joseph M. Arpaio.  In this matter, The Government listed Mr.

21 Casey as a witness and issued a subpoena commanding that he testify at trial related to his

22 representation of his former client, Defendant Joseph M. Arpaio.  Mr. Casey's testimony

23 should be precluded under federal and state authorities regarding the existence of

24 attorney-client privilege and any evidence related to Mr. Casey's testimony should be

25 precluded on the basis of work-product doctrine.

26

27

28

5704324.1

I.      **FEDERAL AUTHORITIES REGARDING THE ATTORNEY-CLIENT PRIVILEGE.**

In *Upjohn Co. v. United States*, the United States Supreme Court stated that the purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." 449 U.S. 383, 389 (1981). Examining the privilege in the corporate context, the Supreme Court explicitly rejected the "control group" test; under a common formulation of that test, a communication between an organization's attorney and its employee is privileged only if the employee is "in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney, or if he is an authorized member of a body or group which has that authority." *Philadelphia v. Westinghouse Elec. Corp.*, 210 F. Supp. 483, 485 (E.D. Pa. 1962). The Supreme Court rejected this test because it "restricts the availability of the privilege to those officers who play a 'substantial role' in deciding and directing a corporation's legal response." *Upjohn*, 449 U.S. at 393, 101 S. Ct. at 684. The Supreme Court also stated "[t]he narrow scope given the attorney-client privilege [under the "control group" test] . . . makes it difficult for corporate attorneys to formulate sound advice when their client is threatened with a specific legal problem" and "threatens to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law." *Id*. at 392, 101 S. Ct. at 684. In rejecting that test, the Supreme Court replaced the "control group" test with an analysis of four factors, *see id*. at 390-394, including whether "[t]he communications concerned matters within the scope of the employees' corporate duties," *id.* at 394, 101 S. Ct. at 685. The Court, however, "decline[d] to lay down a broad rule or series of rules to govern all conceivable future questions." *Id.* at 386, 101 S. Ct. at 681.

Moreover, as the Supreme Court noted in *Upjohn*, "if the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected." 440 U.S.

1   at 393. By excluding from protection conversations between an organization's attorney
2   and its upper-level manager on the basis of the manager's "official" duty to act, the
3   Court's ruling "threatens to limit the valuable efforts of [the government entity's] counsel
4   to ensure their client's compliance with the law." *Id.* at 392. Although the
5   communications in *Upjohn* involved information gathered from lower-level employees,
6   the purpose of the attorney-client privilege is the same for communications initiated by
7   counsel and directed to upper-level management: "to encourage full and frank
8   communication between attorneys and their clients and thereby promote broader public
9   interests in the observance of law and administration of justice." *Id.* at 389. Indeed, "the
10  traditional rationale for the privilege applies with special force in the government context"
11  because "[i]t is crucial that government officials, who are expected to uphold and execute
12  the law and who may face criminal prosecution for failing to do so, be encouraged to seek
13  out and receive fully informed legal advice." *In re Grand Jury Investigation*, 399 F.3d
14  527, 534 (2d Cir. 2005).

15          Further, other persuasive authorities supplement the Supreme Court's
16  reasoning in *Upjohn* and support applying the attorney-client privilege to protect
17  communications here between an organization's attorney (Mr. Casey) and its upper-level
18  managers (Defendant Arpaio), even when the scope of a particular manager's "official"
19  duty to act does not precisely match the subject of the communications. The Restatement
20  (Third) of The Law Governing Lawyers extends the organization's attorney-client
21  privilege to "a communication . . . between an agent of the organization and a privileged
22  person." Restatement (Third) of The Law Governing Lawyers § 73 (2000) [hereinafter
23  "Restatement"]. The Restatement § 70 defines "privileged persons" to include an
24  organization's agent "who facilitate[s] communications" with an attorney. Further refining
25  that definition, the Restatement § 70, comment f states:

26              A person is a confidential agent for communication if the
                person's participation is reasonably necessary to facilitate the
27              client's communication with a lawyer or another privileged
                person and if the client reasonably believes that the person
28              will hold the communication in confidence. Factors that may

be relevant in determining whether a third person is an agent for communication include the customary relationship between the client and the asserted agent, the nature of the communication, and the client's need for the third person's presence to communicate effectively with the lawyer or to understand and act upon the lawyer's advice.

Although the Restatement § 70 commonly justifies disclosure of confidential communications to secretaries who facilitate communications with an attorney, see Restatement § 70, cmt. g, the Restatement also notes "[a] business person may be accompanied by a business associate or expert consultant who can assist the client in interpreting the legal situation," Restatement § 70, cmt. f.

The Restatement cites Proposed-but-rejected Federal Rule of Evidence 503 in support of applying the attorney-client privilege to communications in which the organization's agent facilitates the communication with the attorney. Restatement § 70, reporter's note to cmt. f. Under Proposed Rule 503, "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Proposed-but-rejected Federal Rule of Evidence 503, reprinted at 56 F.R.D. 183, 236 (1973). A privileged person "to whom disclosure is in furtherance of the rendition of professional legal services to the client" includes a "business associate." *See id.*

## II.  ARIZONA AUTHORITIES REGARDING THE ATTORNEY-CLIENT PRIVILEGE.

In addition to the federal authorities cited above, the Local Rules of Civil Procedure for the United States District Court state that the Arizona Rules of Professional Conduct "shall apply to attorneys admitted or otherwise authorized to practice before the United States District Court for the District of  Arizona." *See* LRCiv. 83.2(e). It is therefore clear that Rule 42, Arizona Rules of the Supreme Court, Ethical Rule ("ER") 1.6 concerning "client confidentiality" applies to Mr. Casey's representation of Defendant Arpaio.

ER 1.6 states in pertinent part: "A lawyer shall not reveal information

1    relating to the representation of a client unless the client gives informed consent, the

2    disclosure is impliedly authorized in order to carry out the representation" or the

3    disclosure otherwise falls under one of the exceptions to the rule. *See* ER 1 .6(a).  The

4    paramount importance of client confidentiality is acknowledged in both state and federal

5    courts. "As a representative of his client, a lawyer must act as a zealous advocate,

6    demonstrating loyalty to his client ... [ a]s part of this zealous representation, of the lawyer

7    is admonished not to reveal information relating to representation of his client." *Hitch v.*

8    *Pima County Superior Court*, 146 Ariz. 588 (1985), citing BR 1.6; *see also, Perillo v.*

9    *Johnson*, 205 F.3d 775 (2000), citing ABA Model Rule of Professional Responsibility 1.6

10    (and Comment 5 thereto).

11    ER 1.6 is extremely broad - indeed, significantly broader than attorney-

12    client privilege. It protects from disclosure all information relating to a lawyer's

13    representation, whether or not it derives from privileged communications with clients.

14    ER 1.6 applies at all times during, and even after, a representation.  On the other hand, the

15    attorney-client privilege is more limited in scope than confidentiality under ER 1.6.

16    Privilege protects from compelled disclosure the substance of attorney-client

17    communications made for the purpose of obtaining or imparting legal advice or

18    assistance, and applies only in the context of a legal proceeding governed by the Rules of

19    Evidence.

20    The distinction between privilege and confidentiality is discussed in an

21    opinion issued by the Arizona Committee on the Rules of Professional Conduct

22    ("Committee").  Ethics Opinion 00-11 states:

23    This Committee believes that it is ethically required for an
   attorney to invoke ER 1.6 and refuse to disclose any
24    knowledge related to the attorney's representation of his client
   even though the knowledge is not gained from
25    communications directly from the client. Therefore, the
   Committee believes that an attorney must invoke the attorney
26    client privilege where a communication from the client to the
   attorney is extant. Moreover, an attorney must invoke ER
27    1.6(a), without reference to the attorney-client privilege, as an
   additional ground for refusing to disclose information related
28    to his representation of his client, even though such

knowledge does not derive from client communications.

Arizona Ethics OP 00-11.

Similarly, American Bar Association Formal Opinion 94-385 (1994) states:

A lawyer receiving a court order or subpoena - whether from a government agency or anyone else - for records relating to representation of a current or former client, **must seek to limit the order or subpoena on any legitimate grounds available to protect confidentiality**".

*See* ABA Formal OP 94-385 (emphasis added); *see also* Annotated Model Rules of Professional Conduct, 7th edition.

### III.   WORK PRODUCT DOCTRINE.

Finally, a related, qualified immunity also protects discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial" by a party or his representative, absent a showing of special need by the requesting party. Fed. R. Civ. P. 26(b)(3)(A); *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989).

### IV.   THERE HAS BEEN NO WAIVER OF ATTORNEY-CLIENT PRIVILEGE OR WORK PRODUCT DOCTRINE BETWEEN DEFENDANT ARPAIO AND MR. CASEY.

Here, Mr. Casey's ethical and legal duty of confidentiality to his former client Defendant Arpaio under both federal and state authorities is significantly broader than any applicable evidentiary rule being considered by this Court.   Moreover, irrespective of previous orders made by Judge Snow in the civil context regarding Mr. Casey's communications, Defendant Arpaio is not and has not waived his attorney-client privilege, the requested disclosure is not impliedly authorized, nor does it fall under any of the exceptions to the rule. *See* ER. 1.6(a).  Mr. Casey is, therefore, ethically bound not to disclose the information being sought by the Government, and is also ethically required to pursue all lawful and appropriate avenues available to protect the information from disclosure.

Moreover, to the extent that the Government seeks to introduce documents and tangible items involving Mr. Casey's representation of Defendant Arpaio, those

1  documents are also protected by the attorney-client privilege and the work-product
2  doctrine.

3  　　　　Finally, to be clear Defendant Arpaio never consented to his former counsel,
4  Timothy Casey, disclosing information related to the *Melendres* litigation.  When Casey
5  was subpoenaed for a deposition in the *Melendres* case, his counsel strongly objected,
6  based on attorney-client privilege and client confidentiality, based on the legal authorities
7  set forth above.  Although the Court disagreed and Casey was compelled to testify,
8  Defendant Arpaio has never waived the privilege or consented to the disclosure.
9  Importantly, the civil contempt action as brought against Sheriff Arpaio in his official
10 capacity.  This action, however, is brought against Sheriff Arpaio in his individual
11 capacity.  Because any testimony by Casey related to his representation of Arpaio and
12 MCSO was never intentional, and Casey, Arpaio, and MCSO strongly objected to the
13 testimony, the prior disclosure is inadvertent and does not operate as a waiver for
14 purposes of **this** criminal proceeding against Sheriff Arpaio in his individual capacity.  *See*
15 FRE 502.

16 **V.     CONCLUSION.**

17 　　　　Based on the foregoing, Defendant Arpaio moves to preclude the testimony
18 of Timothy Casey and any related evidence from the scope of his representation of
19 Defendant Arpaio on the basis of attorney client privilege and work product doctrine.

20 　　　　RESPECTFULLY SUBMITTED this 24th day of March 2017.

21 　　　　　　　　　　　JONES, SKELTON & HOCHULI, P.L.C.

22
23 　　　　　　　　　　　By /s/ A. Melvin McDonald
　　　　　　　　　　　　A. Melvin McDonald
24 　　　　　　　　　　　　Linda K. Tivorsak
　　　　　　　　　　　　40 North Central Avenue, Suite 2700
25 　　　　　　　　　　　　Phoenix, Arizona  85004

26 　　　　　　　　　　　GOLDMAN & ZWILLINGER PLLC
　　　　　　　　　　　　Mark Goldman (012156)
27 　　　　　　　　　　　　17851 North 85th Street, Suite 175
　　　　　　　　　　　　Scottsdale, AZ 85255

28 　　　　　　　　　　　Attorneys for Defendant Joseph M. Arpaio

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of March 2017, I electronically filed the foregoing filing with the Clerk of Court through the CM/ECF System which will send notification of such filing to the attorneys of record for the defendants.

/s/ Diana Weeks