UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **CR16-01012-01-PHX-SRB(BSB)** |
| vs. | ) Phoenix, Arizona |
| | ) April 12, 2017 |
| **Joseph M. Arpaio**, | ) 10:35 a.m. |
| | ) |
| Defendant. | ) |
| _____ | ) |


BEFORE:  THE HONORABLE SUSAN R. BOLTON, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MOTION HEARING


Official Court Reporter:
Elizabeth A. Lemke, RDR, CRR, CPE
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 34
Phoenix, Arizona  85003-2150
(602) 322-7247

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1    **APPEARANCES:**

2    **For the Government:**

3                U.S. DEPT OF JUSTICE - PUBLIC INTEGRITY SECTION
             By:  **John D. Keller, Esq.**
4            10th & Constitution Avenue
             Washington, DC  20530
5            (appearing telephonically)

6
                U.S. DEPT OF JUSTICE - PUBLIC INTEGRITY SECTION
7            By:  **Victor R. Salgado, Esq.**
                  **Simon J. Cataldo, Esq.**
8            1400 New York Ave. NW, 12th Floor
             Washington, DC  20005
9            (Mr. Salgado appearing telephonically)

10
     **For the Defendant Joseph M. Arpaio:**
11
                WILENCHIK & BARTNESS
12           By:  **Dennis I. Wilenchik, Esq.**
                  **John D. Wilenchik, Esq.**
13           2810 North Third Street
             Phoenix, AZ  85004
14
                GOLDMAN & ZWILLINGER PLLC
15           By:  **Mark D. Goldman, Esq.**
                  **Jeff S. Surdakowski, Esq.**
16           17851 North 85th Street, Suite 175
             Scottsdale, AZ  85255

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2        (Called to the order of court at 10:35 a.m.)

 3             THE COURT:  Good morning.  Please sit down.

 4             THE CLERK:  Criminal case 16-1012.  United States of

 5   America v. Joseph M. Arpaio.  Time set for hearing regarding

 6   Defendant's Motion to Stay Proceedings.

 7             Counsel, please announce your presence for the

 8   record.

 9             MR. KELLER:  This is John Keller on behalf of the

10   government appearing by telephone.

11             MR. SALGADO:  This is Victor Salgado for the

12   government, also appearing telephonically.

13             MR. CATALDO:  Simon Cataldo for the United States.

14   Good morning.

15             MR. GOLDMAN:  Mark Goldman on behalf of defendant

16   Joseph Arpaio.

17             MR. WILENCHIK:  Good morning, Your Honor.  Dennis

18   Wilenchik and John Wilenchik, also co-counsel for Arpaio.

19             MR. SURDAKOWSKI:  Good morning.  Jeffrey Surdakowski

20   for the defendant Arpaio.

21             THE COURT:  And I note that the defendant is not

22   present.  Are counsel waiving his appearance for purposes of

23   this hearing today?

24             MR. GOLDMAN:  Yes.

25             THE COURT:  This is the time set for hearing on
```

 1   Defendant Arpaio's Motion to Stay Proceedings.

 2            Who is going to be arguing the motion?

 3            MR. KELLER:  Mr. Cataldo will be for the government,

 4   Your Honor.

 5            MR. GOLDMAN:  I didn't hear what he said, Your Honor.

 6            THE COURT:  He said his name, that Victor Salgado --

 7            MR. KELLER:  Cataldo.

 8            THE COURT:  Oh.  I guess I didn't hear what he said

 9   either.

10            MR. CATALDO:  It's me.  It will be Simon Cataldo.

11   Thank you, Your Honor.

12            THE COURT:  Are you arguing on behalf of the

13   defendant, Mr. Goldman?

14            MR. GOLDMAN:  Yes, Your Honor.

15            THE COURT:  If you would please come to the podium,

16   please.  You may proceed.

17            MR. GOLDMAN:  Good morning, Your Honor.

18            THE COURT:  Good morning, again.

19            MR. GOLDMAN:  As we know, this matter before the

20   Court currently arose in the *Melendres* matter which was

21   litigated before Judge Murray Snow.  That matter is the

22   subject of appeal to the Ninth Circuit which was filed on

23   December 27, 2016.

24            THE COURT:  Let me just interrupt for a moment.

25            You say "that matter is on appeal" to the Ninth

 1    Circuit.  But I understand that there have been several

 2    appeals to the Ninth Circuit during the course of the *Melendes*

 3    case.  And so some of which, I assume, have been decided, some

 4    may still be pending.

 5            So when you say "that matter is on appeal," I need a

 6    little more specificity as to what is actually on appeal.

 7            MR. GOLDMAN:  Yes, Your Honor.  I will be pleased to

 8    speak with more precision.

 9            An appeal in connection with that matter was filed on

10    December 27, 2016, by the law firm Jones, Skelton & Hochuli

11    and Charles Cooper, an attorney out of Washington, D.C.

12            The specific issues on appeal are attached to the

13    Defendant's Reply Brief.  The appeal was attached to that

14    which discusses the issues on appeal and the relief requested.

15            The relief requested is that the -- they are asking

16    that the court vacate -- and we're talking about the Ninth

17    Circuit -- vacate the contempt findings and the contempt

18    injunction and remand with instructions to reassign the case

19    to another district judge and appoint a new monitor.

20            THE COURT:  Well, correct me if I'm wrong, but the

21    contempt injunction had to do with aspects of civil contempt

22    found by Judge Snow that are not before me in this criminal

23    contempt matter.  Would that be true?

24            MR. GOLDMAN:  That's -- the contempt injunction --

25    that is true that that issue is not before you today.

1          However, what is before you today is the referral by

2     Judge Snow -- and the issue -- well, to clarify this better,

3     Judge Snow in August sent a criminal referral to the court and

4     to the United States Attorney's Office.

5          And in connection with that criminal referral were

6     many Findings of Facts and Conclusions of Law in which he

7     requested in the referral that the defendant in this case be

8     held liable for criminal contempt.

9          In connection with the matter before the Court of

10    Appeals, the Court of Appeals' matter, if it were to rule in

11    favor of the defendants, including one of them is individually

12    Sheriff Joe Arpaio in this matter, then that would undo the

13    underpinnings of this case.  And it -- it would be unfair to

14    currently try Sheriff Arpaio in connection with that criminal

15    referral when that could all be unwound by the Ninth Circuit

16    when they review this matter and this appeal was filed in

17    December.

18          Therefore, we're asking the Court, as a matter of

19    judicial economy, and so that there will be consistent --

20    consistent rulings by the federal court, although two separate

21    trial courts, so that there can be consistency to put this

22    matter in abeyance and stay it pending a resolution of the

23    Ninth Circuit appeal.

24          THE COURT:  You would agree, would you not, that the

25    preliminary injunction that your client is accused of

1    violating was appealed to the Ninth Circuit Court of Appeals

2    and that preliminary injunction was affirmed?

3          So that the issue -- there is no issue before the

4    Court of Appeals now with respect to the validity of the order

5    that Sheriff Arpaio is accused of violating.

6          MR. GOLDMAN:  That is correct, Your Honor.  That has

7    been the subject of other actions post-issuance of that

8    preliminary injunction.

9          Notwithstanding that, none of these issues as set

10   forth in the current appeal to the Ninth Circuit have been

11   reviewed by the Ninth Circuit.

12         THE COURT:  Thank you.  Anything else before I hear

13   from Mr. Cataldo?

14         MR. GOLDMAN:  Pardon me?

15         THE COURT:  Anything else before I hear from the

16   government?

17         MR. GOLDMAN:  No, Your Honor.

18         THE COURT:  Thank you.

19         Mr. Cataldo.

20         MR. CATALDO:  Thank you, Your Honor.

21         The Court has already raised a few of the points that

22   I had planned to raise regarding this issue.  I would simply

23   like to say that the government is prepared to prove beyond a

24   reasonable doubt all three elements of criminal contempt in

25   this case; those being that the December 23, 2011 preliminary

 1    injunction was a clear and definite order, that the defendant

 2    knew of the order, and that he willfully violated it.

 3          The 2016 contempt findings and the contempt

 4    injunction are simply irrelevant to any of the issues that

 5    will be properly before the Court in this trial.  They also do

 6    not -- the findings themselves do not comprise any part of the

 7    proof that the government plans to present at trial in this

 8    case.

 9          As the Court noted, the December 23rd, 2011

10    preliminary injunction is not challenged in the appeal.

11          As to the discussion about the alleged conflict of

12    interest by the Court in that -- in the underlying litigation,

13    that is simply, as the Court has stated twice already, at the

14    January 25th status conference and in its March 1st order

15    granting the government's motion for a bench trial, irrelevant

16    to the issues that are properly before the Court in this case.

17          Therefore, the outcome of the appeal, the civil

18    appeal in *Melendres* simply can have no effect on the material

19    issues in this criminal trial.

20          Moreover, Your Honor, aside from being logically

21    flawed, the request by the defendant is legally extraordinary.

22    The defense does not cite a single case and the government is

23    aware of no case in which a criminal trial has been stayed

24    pending a civil appeal.

25          Your Honor, for those reasons we respectfully request

1    that the Court deny the requested stay.  Otherwise, I would be

2    happy to answer any questions that the Court may have on this

3    issue.

4              THE COURT:  Thank you.

5              Mr. Goldman.

6              MR. GOLDMAN:  Thank you, Your Honor.

7              I have nothing further to add, other than I think

8    it's beyond question that were the court in the Ninth Circuit

9    to grant the relief requested by the parties, including

10   Mr. Arpaio, that would unwind this entire matter and call into

11   question anything that Judge Snow -- in fact, many things that

12   he did, depending on how that Order of the Ninth Circuit is

13   crafted, if they were to prevail, including but not limited to

14   the criminal referral in the first place.

15             In other words, when I'm talking, when I say the

16   "criminal referral," the August referral of this matter to

17   both another judge and to the U.S. Attorney's Office.

18             Thank you.

19             THE COURT:  Thank you.

20             It's ordered denying the Defendant's Motion to Stay

21   these proceedings pending an outcome of an appeal presently

22   pending before the Ninth Circuit Court of Appeals.

23             I agree with the government that the Order of Judge

24   Snow is not evidence in this case.  The government is required

25   to prove beyond a reasonable doubt the three elements of

 1    criminal contempt.

 2              First, that there was a clear and definite order;

 3              That the defendant knew of the order; and

 4              That the defendant willfully violated.

 5              In looking at the brief that is -- that has been

 6    filed in connection with that appeal, it deals mostly with

 7    issues that concern the other aspects of the contempt order

 8    that are not before the Court and issues of conflict of

 9    interest, alleged ex parte communications, and the like that

10    request the disqualification of Judge Snow and the monitor.

11              To the extent any aspect of the appeal challenges the

12    finding of civil contempt, whether the civil contempt stands

13    or falls, does not relate or is not relevant to criminal

14    contempt because the standard of proof for civil contempt is

15    not beyond a reasonable doubt.  It is a preponderance of the

16    evidence.

17              The government's burden is not altered by the

18    existence or reversal or modification of that civil contempt

19    order.

20              In addition, the Court is not aware of any authority,

21    nor has the defendant cited any, where a criminal case is

22    stayed pending the outcome of a civil proceeding or a civil

23    appeal.

24              Rather, my experience is that it's just the opposite.

25    Because of the aspects of Fifth Amendment privileges or Fifth

CR16-01012-01-PHX-SRB      MOTION HEARING      4-12-17

1    Amendment rights and the like that could be implicated if a

2    civil case precedes a criminal case.

3          In addition, this is a criminal case, a case that is

4    supposed to be decided as expeditiously as possible.  The

5    Court would have no way of knowing how long this stay would

6    last.  I don't know what the briefing schedule is.  All I know

7    is that an opening brief has been filed.

8          So the Motion to Stay is denied.

9          The defendant filed a Fourth Motion for Continuance

10   on April 10th of 2017.  And I think that it would be

11   appropriate to discuss that motion today.

12         The one thing that I wanted to specifically ask

13   about -- and I will ask one of the government's counsel about

14   this -- and that is about this e-mail that's attached that

15   relates to some deposition transcripts that were apparently

16   made available to the government by counsel in *Melendres* that

17   may have included confidential testimony.  And I wasn't really

18   fully understanding what that was about.

19         Who wants to take that one from the government?

20         MR. KELLER:  Yes, Your Honor.  This is John Keller

21   responding for the government.

22         The e-mail relates to portions of depositions of the

23   defendant and other witnesses that were marked confidential at

24   the time they were taken in the *Melendres* case because the

25   testimony related to ongoing internal investigations of the

1    Maricopa County Sheriff's Office.

2            So there were individuals that were at that time

3    actively under investigation for violating the preliminary

4    injunction, among other things.

5            And the Maricopa County Sheriff's Office took the

6    position that any of their ongoing investigations needed to be

7    kept confidential in order to preserve the validity of those

8    investigations.  In other words, the subjects of those

9    investigations were able to read testimony about the very

10   investigations that they were the subject of and would

11   compromise those investigations.

12           The government did not intend to admit any evidence

13   from the confidential portions of those transcripts.  And it's

14   the government's understanding from plaintiff's counsel that

15   most, if not all of the investigations, or at least some of

16   the investigations, that were the basis for marking those

17   depositions' portions "confidential" have now been closed or

18   resolved.

19           But in any case, I think the most important point is

20   that nothing in the confidential portions of those transcripts

21   are the subject of the government's evidence in this trial.

22           THE COURT:  All right.  Thank you.

23           Who from the defense side wishes to address this

24   Motion for Continuance?

25           MR. WILENCHIK:  I will, Your Honor.  Dennis

 1   Wilenchik, please.

 2          Would the Court prefer that I respond to that

 3   specific point before --

 4          THE COURT:  No.  I just wanted to get some

 5   clarification since it appeared that at the time that this

 6   motion was filed, you just had the e-mail and didn't have any

 7   further explanation.  And so now we have at least what the

 8   government has been advised from the counsel from *Melendres*.

 9          MR. WILENCHIK:  Yes.  And I have to just -- let me

10   just hit that real quickly, Your Honor, please.

11          First of all, not that I necessarily doubt what is

12   being said, but I have no way to confirm any of that and don't

13   know any of that to be correct at this moment.

14          THE COURT:  Well, we can assume one thing is correct.

15          MR. WILENCHIK:  Yes.

16          THE COURT:  And that is that the defendant doesn't

17   have any intention of offering at trial any of the deposition

18   testimony that was designated by the parties at the time of

19   the deposition as confidential.

20          MR. WILENCHIK:  Well, frankly, Your Honor, I would

21   have question, to be candid with the Court, as to whether they

22   could admit any portions of any deposition transcripts at all

23   in the proceeding.

24          THE COURT:  For impeachment.  We've already had some

25   discussions about this at a prior hearing and we were talking

1   about the -- whether the government was intending to

2   affirmatively offer deposition testimony.

3           MR. WILENCHIK:  Right.

4           THE COURT:  And I think that where we came out on

5   that was that with respect to the defendant, they may be

6   attempting -- they may seek to offer affirmatively some of his

7   prior testimony under oath, whether in deposition or at trial.

8           But with respect to all of the other witnesses, the

9   depositions would be used for purposes of impeachment.

10          MR. WILENCHIK:  Right, which would not be in evidence

11  necessarily.  I get that.  So that's why I said I'm not sure

12  that it's even relevant.

13          But here's where I cut to the chase what I think the

14  issue is.  It's been my experience here for many years that

15  the practice, at least in this jurisdiction, and I think the

16  Court would agree, is that when an inadvertent disclosure is

17  made, which appears to be from what I can tell the situation

18  here by somebody, that they usually request -- and I think

19  they did by Mr. Young, and disclose that and then the other

20  side has an affirmative obligation to, you know, return the

21  material or whatever.

22          I think that my problem right now in answering you

23  honestly is that I don't know if the government has read

24  whatever it is that's in there.  It shouldn't, as you know,

25  under the prevailing custom and practice.  It should simply

1    return the materials and then get a redacted version.  And

2    that's what I think really should happen here.  Period.

3              And I would ask the government lawyers to just avow

4    that they haven't reviewed any of that material because they

5    shouldn't.  And it should be immediately, based upon my

6    experience, returned to the sender when there's a clear

7    mistake that was made and called to their attention.

8              I think the Court understands that, I hope, and in

9    terms of not only the rules, but the custom and practice

10   ethically in the community to return those.  So that's what I

11   think should happen as far as those materials are concerned.

12             I'm not sure that it relates directly to the Motion

13   to Continue that much, to be candid, but I'm answering the

14   Court as to what I think should happen.

15             THE COURT:  Okay.  Well, I want to address the Motion

16   to Continue.

17             MR. WILENCHIK:  Okay.  Well, as you can well

18   appreciate, Your Honor, we just literally got involved in this

19   case.

20             And the first thing we did was try to spend all

21   evening, and basically look at what we could that we had, and

22   to make a determination since the deadlines, as the Court has

23   pointed out, had passed as to what, if anything, had been

24   filed on some critical issues that we immediately perceived.

25   And that's why we filed, with respect to the Court, the motion

 1    that we did, okay.

 2          And I believe that that can be reraised at any time,

 3    certainly not waived, and can be raised even after the

 4    government begins its case to create double jeopardy, but in

 5    fairness, we thought it was appropriate to bring that first.

 6          Having said that, Your Honor, the basis for the

 7    continuance is, I think, pretty obvious.  Mr. McDonald -- and

 8    we have no input into any of that and just for the record,

 9    obviously withdrew for his own reasons, not being critical of

10    anything he did or believed or the Court --

11          THE COURT:  Well, you may not be being critical of

12    anything he did or didn't do, but that was the reason he had

13    to withdraw because a motion was filed that was, in fact,

14    critical and accused him of ineffective assistance of counsel.

15    And that is what prompted and required his withdrawal.

16          MR. WILENCHIK:  Sure.

17          THE COURT:  And that was filed by Mr. Goldman.

18          MR. WILENCHIK:  Yes.  I am aware of that now, Your

19    Honor.

20          However, I must say in fairness to what Mr. Goldman

21    filed, that this issue was out there for some time and

22    probably should have been perceived as an issue that created a

23    conflict because --

24          THE COURT:  You're referring -- the issue now that

25    you're referring to is the issue in relation to the admission

 1    of civil contempt?

 2            MR. WILENCHIK:  Yes, because it's my understanding --

 3    and again, I'm trying to catch up as quickly as I can, so

 4    forgive me -- but it's my understanding, and I specifically

 5    did ask to look at this, that Mr. McDonald's name was on that

 6    Stipulation as I recall now.

 7            I don't have it in front of me, but my recollection

 8    is that he signed that off with Ms. Iafrate.  So clearly, it

 9    was an issue on the table that he would have known.  And a

10    decision was made and I can't speak further to the details of

11    any of that, of course.

12            But I can say that in fairness to Mr. Goldman's

13    motion, that it is something I would have raised when he got

14    involved in the case as well.

15            But raising that issue does not necessarily dictate

16    what Mr. McDonald does about it.  All my point was is that, as

17    I said, I'm not here to criticize Mr. McDonald, but

18    Mr. McDonald believed he had a conflict, and you know, it's

19    not something that, you know, I or Mr. Goldman, you know,

20    notwithstanding what the Court said, advised him on.

21            And he chose for his reasons -- and, again, not being

22    critical of those reasons -- to withdraw right before trial.

23    And, again, not being critical of the Court in any way.  The

24    Court accepted that and approved of it.

25            Enter myself and my son who now are asked to

 1    essentially replace the institutionalized knowledge that he

 2    had.  Now, we had some knowledge of this case because we had

 3    been representing Mr. Sands as Special Counsel in terms of any

 4    potential criminal referral by Judge Snow.

 5            And, of course, as you know Judge Snow never did.

 6            THE COURT:  I was going to say that's not a name I'm

 7    familiar with.

 8            MR. WILENCHIK:  Executive Chief Sands, Your Honor, is

 9    the gentleman who was in charge of HSU, Human Smuggling Unit,

10    which was, again, the unit involved in this matter that was in

11    charge of -- and, you know, everybody has their version of the

12    facts -- but was in charge of making sure that this word got

13    out, assigned it do a Lieutenant Sousa, who then basically

14    assigned some of it to a Sergeant Palmer, along with

15    Mr. Casey, the attorney, to prepare materials to get out to

16    the officers.

17            It never got done and that's why we're here.  Okay?

18            And so as a result of that -- and I have kept that as

19    short as I can -- but as a result of that, we had some

20    knowledge tangentially because we didn't attend all the

21    proceedings because we never thought Chief Sands would

22    actually be referred for criminal prosecution, although, in

23    fairness to Judge Snow, he advised that, you know, all parties

24    involved should seek independent counsel.

25            So we had some degree, in fairness, of knowledge of

1  the case but not in any way from the perspective of defending

2  the primary target, which is Sheriff Arpaio, who has now been

3  referred.

4      Getting up to speed, I can advise the Court on this

5  case, I think you can appreciate, requires a lot of time,

6  effort, and thought.

7      I have been literally almost nonstop, since I got

8  involved in this a few days ago, literally working round the

9  clock to try to gather together transcripts, interviews, FBI

10  reports, you name it, and prior deposition testimony of all

11  the witnesses.

12      You know, it's a Herculean task to replace Mr.

13  McDonald who sat through all the proceedings, was involved,

14  and did know that this would probably be a criminal referral.

15  And I would assume or presume he was prepared for that.

16      I haven't talked to Mr. McDonald personally.  I have

17  attempted to get what I can from his office.  But I can tell

18  the Court with absolute certainty that trying this case, and

19  assistance from Mr. Goldman in a few weeks from now, and

20  defending this case on facts that are much in dispute and very

21  conflicting in terms of testimonies that were given in many

22  ways, is a task beyond my mortal means.

23      And I will tell the Court with absolute candor to the

24  Court that I don't think I can be ready to try this case with

25  Mr. Goldman in any way, shape, or form to the satisfaction of,

1    I think, my client, my new client, and to this Court, in

2    fairness, with the kind of precision and exactitude that I

3    think the examinations are going to require to move this case

4    along.

5            And I'm not seeking this simply for delay.  I will

6    tell the Court, I don't think there is any prejudice to

7    anybody here.  I have looked again through the file and I saw

8    that a continuance was granted because of March Madness,

9    certainly not as important a reason, I hope, all depending on

10   the team you're rooting for, I suppose, but --

11           THE COURT:  But no one was opposing that.

12           MR. WILENCHIK:  I get that.  I hear you.

13           And I would suggest that nobody should be opposing

14   this on behalf of the government under our prevailing rules of

15   courtesy because there's really no prejudice to anyone here to

16   put this out a little bit, to give us an opportunity to

17   replace Mr. McDonald.

18           I do know the Court -- let me just say this -- I do

19   know the Court in its Order commented on the fact that one of

20   the reasons why Mr. Goldman's continuance was not granted for

21   his son's bar mitzvah was because Mr. McDonald was also

22   prepared to try the case.

23           I'm not.  And if the Court asks me to do that, I

24   will, of course, do everything in my power to do as good a job

25   as I can do, but I really think it would be more efficient for

1    this Court, as well as the parties, to give me an opportunity

2    to really go through this carefully and to determine, you

3    know, how I can present this along with Mr. Goldman, in a way

4    that's efficient for the Court.

5             And I know there's been a lot of requests for

6    continuances.  And I do want to say there's always a

7    temptation, I believe, for the Court to believe that this is

8    just done for the purpose of putting this off or something.

9             I have no reason to put it off.  Okay.  I mean, if I

10   could avow to the Court that I will be fully prepared, I

11   wouldn't be standing here right now.  But looking at the, you

12   know, volumes of documents and books and transcripts and so

13   forth and legal issues that I think are real issues, such as

14   the one with all due respect that we filed the other day which

15   I think is a real issue, and I want to argue that --

16             THE COURT:  Wait.  Are you talking about -- you

17   actually raised two different issues; statute of limitations

18   and jury trial.

19             MR. WILENCHIK:  Well, they're related under 402

20   because, yes, 402 applies.

21             THE COURT:  If 402 applies.

22             MR. WILENCHIK:  Yes.  And I think it does apply

23   clearly.  And I don't think it was ever analyzed.  And, again,

24   I don't mean any disrespect by saying anything like this, but

25   I think that in looking at what I could look at, it doesn't

1    appear, at least from the record that I have, that that issue

2    was ever raised by Mr. McDonald directly with respect to the

3    Sheriff and these issues that are now before you.

4           And I confirm that.  And if somebody can tell me

5    otherwise, I would be glad to look at something that, again,

6    in the interests of time I haven't been able to look at.  But,

7    I mean, from what I see at least in the orders and so forth

8    and the papers that were filed at the time, as our motion to

9    reconsider asks, we think that that is a real issue that was

10   overlooked by the government -- and I will leave it at that --

11   and by Mr. McDonald.

12          And frankly, is a real issue that should be heard on

13   its merits and this case should be postponed for a reasonable

14   period of time to not only hear that, but to give us, new

15   counsel, an opportunity to fully, you know, get our arms

16   around a case that we're just stuck into.

17          And Mr. Goldman was good enough to recognize that

18   this is an impossible task for one lawyer to handle and asked

19   assistance.  And we're happy to help him, not that

20   necessarily, you know, we know any more than he does at this

21   point, but I have been on the job, okay, looking at everything

22   I can look at and I'm not wasting time.

23          I am telling the Court with no doubt in my mind that

24   after my pass-through of all the documents and transcripts,

25   then I would have to sit down with Mr. Goldman and really

1   develop the strategy in the cross-examinations that Mr.

2   McDonald has had years to look at and think about for Sheriff

3   Arpaio.

4            THE COURT:  Who wants to address this latest Motion

5   for Continuance from the government?

6            MR. KELLER:  Your Honor, again, this is John Keller

7   for the government.  I would be happy to address this.  There

8   are several points to be made here in response, Your Honor.

9            First, with respect to the institutional knowledge

10  and preparation for cross-examination which is the point that

11  counsel ended with, counsel has failed to inform the Court

12  that they still represent one of the key adverse witnesses

13  against Mr. Arpaio in the case, former Chief Brian Sands.

14           And so they have sat in on the government's interview

15  of Mr. Sands with respect to the testimony that he has that

16  would be adverse to the defendant Mr. Arpaio.

17           And so that, in combination with their involvement in

18  the prior civil case, certainly does give them a significant

19  degree of institutional knowledge and also raises a conflict

20  issue that procedurally, I believe the Court will be required

21  to address under Federal Rule of Evidence 44(c) before trial.

22           But I think it can be a relatively short hearing.  I

23  just think that it's something that should be done on the

24  record to ensure that the defendant has been fully advised of

25  the conflict, that Mr. Sands has been fully advised of the

1    conflict, and that the Court is fully advised of the conflict.

2            And to the extent that the parties along the way,

3    meaning Mr. Sands and Mr. Arpaio, that the Court also agree

4    that despite the fact that this is an adverse witness who the

5    Wilenchiks would be subject to cross-examination and would be

6    subjecting the cross-examination on behalf of their new

7    client, that the Court is willing to accept any provincial

8    waivers as to that issue.

9            But turning back to the continuance, Your Honor, so

10   if Mr. Goldman and his firm were -- had sufficient time to

11   prepare a defense in this case and to represent the defendant

12   at trial, it can't be that now with the appearance of

13   additional counsel who have additional institutional knowledge

14   and additional resources, that now there is insufficient time

15   for the defense team to be ready for trial.

16           That's just -- that's illogical.

17           And so while I appreciate that the Wilenchiks have

18   just entered the case, that was -- they decided to undertake

19   the representation knowing the current trial date and knowing,

20   based on the representation of Mr. Sands, much about the

21   history of the case.

22           And so deciding to do that, there is no basis for the

23   Court to now continue the trial just because defense has

24   additional resources at its disposal at this point.

25           With respect to prejudice, of course, the prejudice

1    is to the public.  The public has an interest in the

2    resolution of this case.  That's the point of the Speedy Trial

3    Act.  That's what the provision of the Speedy Trial Act

4    provides that is cited in the defense motion that the public's

5    interest in the resolution of these charges is paramount and

6    must be overcome.

7          And here there is no compelling reason that overcomes

8    the public interest in resolution of this case.  And there is

9    prejudice to the government, because based on the Court's --

10   the Court's efforts to keep this -- keep this trial date, the

11   government provided an exhibit list and witness list and

12   copies of its exhibits well in advance of trial, two months in

13   advance of trial, to the defense.

14         And so it's further extending -- that's another

15   reason why defense counsel can certainly be adequately

16   prepared given the current trial date.  Giving defense counsel

17   additional time with the government's trial exhibits, with the

18   government's witness list, and with their access to one of the

19   key government witnesses in this case because they represent

20   him, it does prejudice the government.

21         For all those reasons, Your Honor, the government

22   opposes this additional, last-minute effort to try and avoid

23   trial in this case.

24         Every counsel who has entered this case has put on a

25   show of an emergency need for a continuance of the trial date

1    and this is no different than that, neither is the Motion to

2    Stay, neither is the renewed Motion to Dismiss and those

3    motions should be denied and the trial should proceed on the

4    presently-scheduled date.

5            THE COURT:  Thank you, Mr. Keller.

6            I want to correct one thing that Mr. Keller said.

7            I don't think that Mr. Goldman has ever admitted that

8    he could be prepared for trial on April 25th.  In fact, he

9    suggested the opposite.  And the point of my Order when he

10   requested the continuance was that if he couldn't be prepared,

11   then he shouldn't have undertaken to come into the case as

12   co-counsel with Mr. McDonald.

13           Reluctantly, I believe that I must grant this request

14   for a continuance.

15           My first reaction upon reading it was, well, it's

16   Mr. Goldman's fault that we're in this problem with not having

17   Mr. McDonald in the case.  But it's not the defendant's fault.

18   It's not the defendant that caused Mr. McDonald to have to

19   withdraw.  It's because of a motion that Mr. Goldman filed.

20           I shouldn't have used the word "fault."  It's what

21   prompted what I believe to be the requirement that Mr.

22   McDonald withdraw.  And while I'm not happy about it, I don't

23   think that it's fair to the defendant to place him in a

24   position now where all of his lawyers have only been in the

25   case for a few weeks before the trial date.

1            However, I'm going to offer you two different trial

2    dates, probably neither of which you're going to like, because

3    the request is for 60 days, which takes us to June and July of

4    2017.  And here are the dates that I will propose as possible

5    dates for this bench trial.

6            MR. WILENCHIK:  By that I'm assuming you have not

7    fully made up your mind on our motion but -- I'm just kidding.

8            THE COURT:  You can actually make the other

9    assumption that I have -- I will not, again, be considering

10   the issue as to whether or not this is a right to a jury trial

11   or a bench trial.

12           MR. WILENCHIK:  Okay.  Can I just ask one quick

13   question on that, Your Honor, and not to interrupt your flow

14   of thought, but thank you.

15           THE COURT:  Yes.

16           MR. WILENCHIK:  We believe that we have to raise that

17   issue at trial, particularly after double jeopardy attaches.

18   And I hope the Court will not take offense if we do that.

19           THE COURT:  I take no offense whatsoever.  I'm just

20   not --

21           MR. WILENCHIK:  Yes.  I understand.

22           THE COURT:  I'm just not going to consider it again.

23           MR. WILENCHIK:  Okay.

24           THE COURT:  In any event, the dates that I have

25   available would be Friday, June 9th and the week of June 12th,

1    the 12th through the 16th and possibly the following Monday.

2              The other dates that I have that you're going to like

3    even less.

4              MR. WILENCHIK:  I can't check these.  I had to turn

5    my phone off.

6              THE COURT:  Are June 26th through the 30th, and July

7    5th, 6th, and 7th.

8              MR. WILENCHIK:  You were right.

9              THE COURT:  There are not any days in June, July, and

10   August that anyone is going to like but we're going to have to

11   make something work --

12             MR. WILENCHIK:  I appreciate that.  I was being

13   sarcastic.

14             THE COURT:  -- during that time period.

15             MR. WILENCHIK:  Judge, let me just, if I may,

16   quickly -- I don't have my phone on because I turned it off

17   for -- yes.  And I'm sure Mr. Goldman the same thing.

18             Can we do one thing and just get back to the Court

19   today within a few hours?

20             THE COURT:  Only if it's after you have a telephone

21   conversation with Mr. Keller --

22             MR. WILENCHIK:  Yes.  Sure.

23             THE COURT:  -- about these dates.

24             The only other thing I want to say about these dates,

25   one of the things that can be an advantage in a bench trial

CR16-01012-01-PHX-SRB        MOTION HEARING        4-12-17

 1    that one can't really do in a jury trial is to try cases not
 2    necessarily over consecutive days.
 3              I am reluctant to consider that because government's
 4    counsel is from Washington, D.C. and I don't want to have a
 5    day here and a day there where they have to jump on airplanes
 6    for 24 hours and then come back three days later.
 7              MR. WILENCHIK:  Agreed.
 8              THE COURT:  And I think it's better for everyone if
 9    they are consecutive days.
10              MR. WILENCHIK:  Okay.
11              THE COURT:  But I realize that there may be some
12    difficulties in coordinating the calendars.
13              But I think that we could try the case in the
14    potential seven full days that could be available starting
15    June 9th or the eight consecutive -- well, the eight days with
16    a four-day July 4th weekend starting June 26th.
17              I'm not suggesting to anyone that we would have trial
18    on Monday, July 3rd.
19              MR. WILENCHIK:  Understood.
20              THE COURT:  So could -- Mr. Keller, can you talk in
21    the next couple of hours with Mr. Wilenchik and Mr. Goldman
22    about these potential new trial dates?
23              MR. KELLER:  Yes.  Absolutely, Your Honor.  The
24    government would prefer the June dates as opposed to the June
25    and July dates but I'm happy to discuss that with defense

 1    counsel.

 2            THE COURT:  Okay.  Then somebody can get back with my

 3    Courtroom Deputy Maureen.  Make sure you have her number and

 4    we can reset the trial for hopefully one of those two options.

 5            MR. WILENCHIK:  Sounds good, Judge.

 6            THE COURT:  Is there anything else that the

 7    government wishes to address today?

 8            MR. SALGADO:  Your Honor, very briefly.  This is

 9    Victor Salgado.  This is a less pressing matter that we have

10    but we wanted to request 10 or 15 minutes for an opening

11    statement and 30 minutes for closing argument.

12            THE COURT:  Sure.  No problem.

13            MR. WILENCHIK:  The only other thing -- two things,

14    quickly.

15            There was a statement made about a potential

16    conflict.  I want to assure the Court that I have consulted

17    with counsel.  I don't believe there is any conflict, nor do I

18    think there's even a scintilla of an argument that there's a

19    real conflict in representing somebody else in the case who is

20    a witness.  It happens all the time.

21            And if there is anything adverse, which I don't

22    believe there is anything that will be, I have co-counsel, as

23    you know under the prevailing rules, that can ask questions of

24    that witness.

25            If the Court wants me to brief that, I'm happy to,

 1    but I'm confident that there is no conflict that I have ever

 2    seen created in that scenario when the two people are not

 3    adverse, have no lawsuits against one another, and, in fact,

 4    have waived knowingly and have been asked to be advised by

 5    separate counsel.

 6            And so I just wanted to let the Court know because

 7    the statement was made that I have looked into that.

 8            THE COURT:  Well, I don't think that any briefing is

 9    necessary.  The government -- as the government suggested, the

10    waiver is the important thing.

11            MR. WILENCHIK:  It has been done fully.

12            Okay.  And then the other thing, again, not to

13    belabor it, but to get back to the motion, I assume the Court

14    will rule on our Motion for Reconsideration.

15            THE COURT:  I will.

16            MR. WILENCHIK:  And I just ask you to look carefully

17    on the record on that.  Because, again, not besmirching in any

18    way or attempting to anyone, I think you will see that this

19    issue was never addressed at all as to Sheriff Arpaio for the

20    matter that's before us now.  It was raised as to tangential

21    issues as to other people.

22            THE COURT:  Didn't my Order say that I fully

23    considered that issue?

24            MR. WILENCHIK:  Well, yes, I suppose you did.  I

25    apologize.

1    THE COURT:  It may not have been explicitly raised,

2    but that doesn't mean that I didn't consider it.

3    MR. WILENCHIK:  Well, I appreciate that.

4    THE COURT:  That does bring me to another issue,

5    which is, in light of the grant of the trial continuance, does

6    that not moot your request for a stay so that you can file an

7    application for a Writ of Mandamus?

8    MR. WILENCHIK:  I guess I'll await your new order to

9    answer you, but I think it probably does, yes.

10    THE COURT:  Okay.  Thank you.

11    Oh.  There was one other thing that I just wanted to

12    mention as long as I have everybody here because I don't know

13    when we will be talking again.

14    I saw that there was a withdrawal of the defendant's

15    motion with respect to the subpoena to Mr. Casey.  But that

16    that withdrawal also said that there wasn't a waiver of the

17    attorney-client privilege.

18    I didn't really know whether there was anything

19    that's -- I didn't know if Mr. Casey is withdrawing his

20    motion.  I don't know if you know that.

21    MR. WILENCHIK:  Yes.  The best I understand -- I

22    haven't seen any such thing from Mr. Casey, Your Honor.

23    THE COURT:  I haven't either.

24    MR. WILENCHIK:  Yes.  As far as we're concerned, this

25    is one of these issues, again, that I have looked briefly

1    into.  And I think given the fact that we have a continuance,

2    it would really help before the trial so we're not wasting

3    time in trial on these kinds of things -- but, of course, I'm

4    not trying to tell you how to run your calendar -- but I think

5    that it would help to set aside maybe a day before the trial

6    to deal with these kinds of issues because they are a little

7    sticky in terms of whether the conflict is waived for this

8    proceeding -- you know, the conflict --

9              THE COURT:  The waiver of attorney-client privilege?

10             MR. WILENCHIK:  I apologize.  I was just saying I

11   didn't mean to say that.

12             The waiver was given as to these proceedings in a

13   criminal proceeding.  So I guess the best I can answer is our

14   position is we're asserting privilege.

15             But if the Court disagrees and thinks it's been

16   waived and that's an issue, quite frankly, that I don't know

17   the answer to right now, then we're happy to proceed and we

18   will deal with Mr. Casey.  And if he wants to urge the Court

19   otherwise, I don't know that he has the standing to do that if

20   the -- well, I guess he does to the extent he never waived it.

21             THE COURT:  I think he has an obligation to resist

22   the subpoena.

23             MR. WILENCHIK:  No.  I understand.  And frankly, I

24   think thinking in through, he has an obligation to raise it

25   unless we have waived it.

1          I want to say, but again, I haven't gone through all

2   of the transcripts, that I think at some point in that civil

3   proceeding there may have been a waiver, okay, not at the

4   outset from what I'm reading because I haven't gotten through

5   it all.

6          THE COURT:  Well, my understanding is that it was a

7   reliance upon advice of counsel that caused Judge Snow to

8   determine that you can't assert advice of counsel and then --

9          MR. WILENCHIK:  Yes.

10          THE COURT:  -- and then say that you don't want your

11   lawyer to say what the advice was.

12          MR. WILENCHIK:  If I can just address that quickly

13   before we go.

14          Again, one of these --

15          THE COURT:  I mean, we are familiar with that in all

16   other -- in lots of civil matters.

17          MR. WILENCHIK:  Yes.  Sure.  I don't think -- first

18   of all, I agree with the Court if you were going to say that

19   advice of counsel is probably not a defense in a criminal

20   contempt proceeding because I have looked at that issue in the

21   past.

22          I don't think this is an advice-of-counsel defense in

23   this case, though, I have to say to the Court.

24          THE COURT:  I have no reason to think that it is or

25   isn't.  I just know that that was the basis upon which --

1          MR. WILENCHIK:  I think you're right.

2          THE COURT:  -- upon which Judge Snow ordered Mr.

3    Casey to testify because he determined that advice of counsel

4    was raised.

5          MR. WILENCHIK:  Yes.  I think you're probably right.

6          I'm just saying to the Court, I don't think in this

7    proceeding that that is a defense you can even raise in a

8    criminal contempt, number one; and number two, for that reason

9    I would argue that we have probably not waived it anywhere.

10         And probably you're right.  Judge Snow just finding

11   sua sponte that it could be raised because of a possible

12   waiver on the advice of counsel defense.

13         But we're not raising that defense here.  So it is an

14   issue I think we need to brief and look at.  And, again, a

15   reason for -- I know you said -- let me finish with this.

16         I know you said, Your Honor, in I think it was one of

17   your minute entries, that -- let me make sure I'm getting it

18   right.  But I think the bottom line is you said that if there

19   were factual issues in dispute or that there were factual

20   issues in dispute, that it should be heard at trial.

21         Now, I may be messing up your Order a little bit.

22         THE COURT:  That's kind of what I said.

23         MR. WILENCHIK:  Yeah.

24         THE COURT:  I was referring in particular to a couple

25   of motions like the one that is called a Motion For a

```
 1    Voluntariness Hearing --

 2              MR. WILENCHIK:  Okay.

 3              THE COURT:  -- because we take up those -- that's an

 4    evidentiary issue, not a legal issue.

 5              MR. WILENCHIK:  That's fair.

 6              My only point to that would be that given now that we

 7    do have the luxury of a little time, that some of these should

 8    probably be heard in advance, only because, I would suggest,

 9    that because they're factual in nature and they are going to

10    chew up some time and they're separate issues from the

11    substance, I think, of the case itself, I would suggest that

12    the Court at least consider maybe setting a day or an

13    afternoon or something aside for some of these points that I

14    think should be raised.

15              And I know the deadline passed for motions and I

16    can't do anything about that because we just got involved.

17    But I do think there are certain legal and factual issues

18    that, I think for the Court's benefit, quite candidly, the

19    Court should resolve prior to us getting into trial and it

20    probably will speed up the trial to a large extent.  I'm

21    guessing, but I think it will.

22              THE COURT:  While it might not be difficult if it was

23    an issue that involved the testimony of your client to hold a

24    separate hearing, another one of these motions which I

25    consider to be almost a motion in limine -- you may not be
```

1    familiar with it -- it's a defendant's motion to preclude

2    certain victim testimony.

3          That's the kind of thing I rule on at trial.  I don't

4    say "this person can't take the stand and I'm not going to

5    hear anything they say" because I have no idea what they're

6    going to say.

7          But I certainly can hear the objection after I get

8    their name --

9          MR. WILENCHIK:  It just seems to --

10         THE COURT:  -- and rule on it.

11         And I wouldn't have the government subpoena those

12   people to come to a separate hearing to hear what they want to

13   say, to then say I'm not going to allow them to testify at

14   trial.

15         That seems to me to be a waste of time and a

16   tremendous inconvenience to nonparty witnesses.

17         MR. WILENCHIK:  I would agree with the Court on that

18   statement I would.  But here is what I would suggest as an

19   alternative.

20         Obviously, the government, if it doesn't intend --

21   and I'm not clear it does intend to call alleged victims -- I

22   don't know are relevant to any of the issues in this case --

23   but having said that, if they intend to do that, maybe they

24   can just proffer what it is that they expect those witnesses

25   are going to testify to that's relevant to this case.

1      And as I said, if we could set aside maybe just an

2  afternoon or something on some of these tangential issues, it

3  will probably speed everything up.  Because the Court can say

4  I think it's relevant and I want to hear it or, you know what,

5  it's not and it just doesn't have any impact on me so why

6  waste the time at trial.

7      MR. KELLER:  Your Honor, if I can respond at this

8  point to a couple of the points Mr. Wilenchik has made.

9      THE COURT:  Sure.

10      MR. KELLER:  Thank you, Your Honor.

11      First of all, on the motion regarding Mr. Casey,

12  defense counsel had an opportunity to address this and filed a

13  notice that it was withdrawing its motion and is now standing

14  up in court trying to reassert the motion and ask the Court to

15  set a date to fully litigate that motion.

16      I think based on counsel's notice that he was

17  withdrawing its motion, he's probably waived the arguments

18  that he's now trying to put before the Court.

19      THE COURT:  I don't think we're talking about

20  Mr. Casey.  We're talking about this voluntariness issue and a

21  couple of the -- I don't think that what Mr. Wilenchik and I

22  have been discussing has anything to do with Mr. Casey's

23  present motion --

24      MR. WILENCHIK:  I agree.

25      THE COURT:  -- present motion to quash the subpoena.

1          MR. KELLER:  No, Your Honor, but the discussion did

2     center around the advice of counsel and whether or not

3     privilege had been waived.

4          And Mr. Wilenchik was asking for an opportunity to

5     address the Court and argue the merits of that motion which

6     they have just filed a notice that they are withdrawing.

7          As to the victims, if Mr. Wilenchik had read the

8     government's motion, it does proffer the relevant facts that

9     those victims are expected to testify to.

10          And so, again, these issues have been fully briefed

11     and are before the Court should the Court wish to address

12     them.

13          THE COURT:  Well, I'm not going to set any hearings

14     on anything today.  What we're going to get before the close

15     of business today is a new trial date.  And after I have had a

16     chance -- well, the last time we met some of these motions

17     were not fully briefed.  I believe they all are now.

18          And if I think that I need any further hearing,

19     whether evidentiary or just argument on any of them, I won't

20     hesitate to set a hearing.  But I'm not drawing that

21     conclusion today at all, Mr. Keller.

22          And I certainly would not set any evidentiary hearing

23     with respect to the individual witnesses who have been

24     described as victims for the reasons that I have already

25     stated.

1          MR. WILENCHIK:  Yeah.  And I wasn't trying to be

2    presumptuous and suggest otherwise.  I just thought these are

3    issues the Court might want to address is all I was bringing

4    to your attention.

5          And the final thing, Your Honor, I would appreciate

6    it if the government wouldn't -- and I know this sounds petty,

7    perhaps, but in its remarks, if the government wouldn't try to

8    personalize this on me not reading something when I just

9    advised everyone that I just got involved in this case.  And

10   there's a ton of material that I can lay on your desk and it

11   would probably cloud you from my view.

12          So I appreciate a little bit of courtesy in that

13   regard is all.

14          THE COURT:  The one thing that I did want to say

15   because you mentioned the motions deadline having passed --

16          MR. WILENCHIK:  No.  It has passed.

17          THE COURT:  I'm saying having passed.

18          MR. WILENCHIK:  Yes.

19          THE COURT:  And with respect to any motions that you

20   want to file beyond the motions deadline, I believe the proper

21   procedure is to file a motion to ask that the motion be filed

22   and explain to me why it could not have been done by the

23   motions deadline.

24          And one reason that won't get you a hearing on the

25   motion is "I wasn't in the case then."

1     It would have to be as we're all used to with respect

2   to other motions why it was information that was not available

3   at that time, newly disclosed information, a change in the

4   case law, something that would justify the late filing of a

5   motion.

6         MR. WILENCHIK:  Yes.

7         THE COURT:  And so I --

8         MR. WILENCHIK:  I just want the Court to know I do

9   agree with that and it was on my mind.

10     But given this hearing and the time we had when we

11   got involved immediately, we filed that knowing that the Court

12   would probably disapprove of that and I apologize for that.

13   It was just a timing issue and I do agree that that should be

14   the procedure, Your Honor, and you are absolutely correct on

15   that.

16         THE COURT:  Okay.  Mr. Keller, is there anything else

17   that you wanted to raise in light of my conversation with Mr.

18   Wilenchik?

19         MR. KELLER:  Not at this point, Your Honor.  No.

20         THE COURT:  Okay.  So some pair of you or more of you

21   please have a telephone conversation within the next couple of

22   hours and then call Maureen and we will reset the trial.

23         MR. WILENCHIK:  Thank you very much, Your Honor.  I

24   appreciate it.

25         MR. KELLER:  Your Honor, I would just ask since

CR16-01012-01-PHX-SRB        MOTION HEARING        4-12-17

```
 1    Mr. Goldman and Mr. Wilenchik are on the ground there
 2    together, if they could call me as opposed to me trying to
 3    track them both down, I would appreciate that.
 4            THE COURT:  Mr. Wilenchik agrees.  They will give you
 5    a call.  Do you want to announce on the record what number you
 6    want them to call?
 7            MR. KELLER:  Sure, Your Honor.  202-598-2231.
 8            MR. WILENCHIK:  Very good, Your Honor.
 9            THE COURT:  Got it?
10            MR. WILENCHIK:  Yes.  Thank you.
11            THE COURT:  Okay.  Thank you.
12            Court is adjourned.
13            MR. KELLER:  Thank you, Judge.
14       (Proceedings adjourned at 11:32 a.m.)
15                        *  *  *
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2                    C E R T I F I C A T E
 3
 4          I, ELIZABETH A. LEMKE, do hereby certify that I am
 5    duly appointed and qualified to act as Official Court Reporter
 6    for the United States District Court for the District of
 7    Arizona.
 8          I FURTHER CERTIFY that the foregoing pages constitute
 9    a full, true, and accurate transcript of all of that portion
10    of the proceedings contained herein, had in the above-entitled
11    cause on the date specified therein, and that said transcript
12    was prepared under my direction and control.
13          DATED at Phoenix, Arizona, this 20th day of April,
14    2017.
15
16
17
18
19                        s/Elizabeth A. Lemke
                          ELIZABETH A. LEMKE, RDR, CRR, CPE
20
21
22
23
24
25
```