

**ATTORNEYS AT LAW**
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810     Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
John D. Wilenchik, #029353
admin@wb-law.com



Mark Goldman, #012156
Vincent R. Mayr, #013954
Jeff S. Surdakowski, #030988
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
Main: (480) 626-8483
Facsimile: (480) 502-7500
docket@gzlawoffice.com
*Attorneys for Defendant Joseph M. Arpaio*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No.: 2:16-cr-01012-SRB-1 |
| Plaintiff, | |
| v. | **DEFENDANT'S MEMORANDUM OF LAW** |
| Joseph M. Arpaio, | |
| Defendant. | |

Pursuant to the Court's July 6, 2017, Order, Defendant hereby submits his Memorandum of Law.

…

## I. Burden of Proof – Beyond a Reasonable Doubt

"[I]t is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty **beyond a reasonable doubt**…." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444 (1911)(emphasis added); *see also United States v. Powers*, 629 F.2d 619, 626 at n.6 (9th Cir. 1980).

## II. Elements

"Criminal contempt is established when there is [1] a clear and definite order of the court, [2] the contemnor knows of the order, and [3] the contemnor willfully disobeys the order." *Powers*, 629 F.2d at 627.

### A. "A Clear and Definite Order of the Court"

"It is well established that before one may be punished for contempt for violating a court order, the terms of such order should be clear and specific, and leave no doubt or uncertainty in the minds of those to whom it is addressed." *United States v. Joyce*, 498 F.2d 592, 596 (7th Cir. 1974). "Failure to take action required by an order can be punished only if the action is clearly, specifically, and unequivocally commanded by that order." *Id.*, *quoting United States v. Fleischman*, 339 U.S. 349, 370-371 (1950). "Stated another way, it appears to be settled law that contempt will not lie for violation of an order of the court unless the order is clear and decisive and contains no doubt about what it requires to be done. Finally, where there is ambiguity in the court's direction, it precludes the essential finding in a criminal contempt proceeding of willful and contumacious resistance to the court's authority." *Joyce*, 498 F.2d at 596, *citing Traub v. United States*, 232 F.2d 43, 47 (D.C. Cir. 1955). To "serve as a valid basis for contempt, the court's direction must be clear and unequivocal *at the time it is issued*." *Traub*, 232 F.2d at 47 (emphasis added). "The reasonableness of the specificity of an order is a question of fact and must be evaluated in the *context in which it is entered and the audience to which it is addressed*. For example, it may well be necessary that the specificity of orders directed to laypersons be greater than that of orders to lawyers." *United States v. Turner*, 812 F.2d 1552, 1565 (11th Cir. 1987)(emphasis added). "Mandatory injunctions should be clear, direct, and unequivocal. They should not be hedged about by conditions and qualifications which cannot be performed, or *which may be confusing to one of ordinary intelligence*." *N.L.R.B. v. Bell Oil & Gas Co.*, 98 F.2d 405, 406 (5th Cir.

1

1938)(emphasis added). "[A] defendant is, of course, not required to seek" clarification of an unclear order; and this may not be held against the defendant in a criminal contempt case, unless the defendant's interpretation of the order was "twisted or implausible." *United States v. Greyhound Corp.*, 508 F.2d 529, 532 (7th Cir. 1974).

Some concrete examples of Orders that were not sufficiently "clear and definite" to support criminal contempt:

1) In *Walling v. Crane*, the Fifth Circuit found that "[a] decree of the Court containing only a negative command that the Defendant shall not fail to pay" wages to its employees was "too indefinite to support a conviction in contempt." *Walling v. Crane*, 158 F.2d 80, 84 (5th Cir. 1946). The Circuit court characterized the decree as an order merely to "pay money to un-named persons in unascertained amounts." *Id*. Because criminal contempt requires "that the language in the commands of the decree be clear and certain," and "the decree in no wise undertook to adjudge that any specific amount was due to any employee," the decree could not support a conviction for criminal contempt. *Id.*

2) In *Ashcraft v. Conoco, Inc.,* 218 F.3d 288, 299 (4th Cir. 2000), the Fourth Circuit reversed a criminal contempt conviction where the defendant, a news reporter, had opened a court envelope that was marked "TO BE OPENED ONLY BY THE COURT," but which was (mistakenly) produced to him in response to a public records request, and had clearly been opened already. The Fourth Circuit found that the "decree"[1] on the envelope was "insufficiently specific to support a criminal contempt conviction." *Id.* at 292. "This warning could reasonably be understood as informing a reader *either* that the envelope may only be first opened by the court *or* that the envelope may never be opened by anyone other than the court. That is, one could quite reasonably read 'TO BE OPENED ONLY BY THE COURT' as referring only to the *initial* opening of the envelope or as referring to *any* opening of the envelope itself, whether the initial or a successive opening. That the former understanding of the warning is plausible is critical…" *Id*. at 299. Because the "decree" was not "definite, clear, specific," and it failed to leave "no doubt or uncertainty in the

---

[1] Even if it were an official "decree" or order, which the Fourth Circuit also found that it was not.

2

minds of those to whom it was addressed," the Fourth Circuit reversed the conviction for contempt.

3) In *United States v. Joyce*, the Seventh Circuit reversed a criminal contempt conviction based on an order that directed the defendant to "use his best offices" to obtain records that had been requested by the Internal Revenue Service. 498 F.2d at 594. The Seventh Circuit found that "the district court's order of June 2, 1972, was indeed vague and ambiguous in its language and direction. It did not, in short, prescribe in definite and precise terms exactly what appellant was commanded to do in order to produce the requested records." *Id.* at 596. "Operating to the best of his ability under such nebulous direction, appellant lacked the willful and contumacious resistance to the court's authority which is necessary to support a criminal contempt charge." *Id. See also Downey v. Clauder,* 30 F.3d 681, 686 (6th Cir. 1994)(reversing criminal contempt conviction where district court's order was "hardly a model of clarity").

### 1. **The Due Process Clause and the Rule of Lenity require that any ambiguity in the district court's order be resolved in Defendant's favor**

The Fifth Amendment requires at a minimum that in order to convict a defendant for criminal contempt of a court order, the order must have given notice to a person of "ordinary intelligence" that his conduct was criminal, and the order must have been definite enough that men of "common intelligence" need not guess at the order's meaning and could not differ as to its application. *United States v. Lanier*, 520 U.S. 259, 266 (1997); *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). If the order is ambiguous, then any doubt must be resolved in favor of the Defendant, following the "rule of lenity" that is likewise applied to ambiguous laws, as discussed below. *See e.g. United States v. Bass*, 404 U.S. 336, 348 (1971).

"Criminal contempt is a crime in the ordinary sense." *Bloom v. Illinois*, 391 U.S. 194, 201 (1968). "…[C]onvictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same." *Id.* "Criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings…" *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 632 (1988). These protections include the Fifth Amendment guarantee that no person shall be deprived of life, liberty or property without due process of law. *Johnson*, 135 S. Ct. at 2556. And the "first essential" requirement of due process is that an ordinary

3

person must be given fair notice that their conduct may be punished. *Id.* "Living under a rule of law entails various suppositions, one of which is that all persons are entitled to be informed as to what the State commands or forbids." *Papachristou v. City of Jacksonville*, 405 U.S. at 162 (1972)(internal quotation marks and bracketing omitted).

Because the Court has very broad powers to enjoin potentially any act, then by the use of its criminal contempt powers, it can turn potentially any act into a crime—no matter how innocent the act would otherwise be, in the absence of an order that clearly and specifically enjoins it. The Court's power to criminalize otherwise innocent behavior by issuing an injunction is comparable to Congress's power to criminalize otherwise innocent behavior by passing a law. The requirement that a court injunction at least be "clear and definite" to support a criminal contempt conviction is therefore akin to the "well-recognized requirement" under the Fifth Amendment that a criminal statute not be "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."[2] But unlike Congress, the Court can exercise its power unilaterally, on uncertain grounds, and without delay; and so the need for proper constitutional safeguards against the criminal enforcement of a court order is even greater. *See e.g. Bloom*, 391 U.S. at 207 (remarking on "the need for effective safeguards" against abuse of the criminal contempt power); Wright and Miller, § 702 Nature of Contempt Power, 3A Fed. Prac. & Proc. Crim. § 702 (4th ed.)("[t]he possibilities of abuse [of the criminal contempt power] have been reduced by procedural protections imposed by the Supreme Court, but they have not vanished").

A criminal statute fails to satisfy the Fifth Amendment when a person of ordinary intelligence cannot understand what is required of them without the aid of lawyers—but it especially fails when even lawyers have to guess at the interpretation or meaning. "[T]he vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Lanier*, 520 U.S. at 266 (quoting *Connally v. General Constr. Co.*, 269 (1926)). "No one may be required at peril of life, liberty or property to speculate

---

[2] *Johnson*, 135 S. Ct. at 2556.

4

as to the meaning of penal statutes." *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). If the statute is interpreted to proscribe activities that "are normally innocent," then this also supports that the statute is unconstitutionally vague. *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972).[i] A statute is unconstitutionally vague "as applied" to a defendant's particular conduct, if the statute "fail[s] to put a defendant on notice that his conduct was criminal." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013). "For statutes ... involving criminal sanctions the requirement for clarity is enhanced." *Id*. Finally, "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." *Bass*, 404 U.S. at 348. This is referred to as the rule of "lenity." *See id.* "[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Id.* at 347.[3] Unless Congress "plainly and unmistakably" made the act a crime, it is not a crime. *Id.*

To punish a defendant who was not "plainly and unmistakably" put on notice, whether by order or by law, that his conduct was criminal would violate the Fifth Amendment at a minimum, not to mention the more stringent common-law requirement that an order be "clear and definite" (as described above). And if the defendant's conduct is "normally innocent"—for example, if it constitutes a "common practice" by law enforcement agencies across the state, and if even lawyers can argue in good faith about whether the conduct violated the law, much less the court's order—then this supports that the order would not give fair notice to a person of ordinary intelligence that his conduct was criminal.

### B. Willfulness

"Willfulness, for the purpose of criminal contempt, does not exist where there is a good faith pursuit of a plausible though mistaken alternative." *United States v. Greyhound Corp.*, 508 F.2d 529, 532 (7th Cir. 1974). "To provide a defense to criminal contempt, the mistaken construction must be one which was adopted in good faith and which, given the background and purpose of the order, is plausible." *Id.* A

---

[3] "[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, **legislatures and not courts** should define criminal activity. This policy embodies the instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should." *United States v. Bass*, 404 U.S. 336, 347 (1971)(internal quotation marks and citations omitted, emphasis added).

5

defendant's good faith belief that he is complying with the order of the court prevents a finding of willfulness. *United States v. Armstrong,* 781 F.2d 700, 706 (9th Cir. 1986). In general, "willfulness" requires a "deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order." *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 782 (9th Cir.1983). "It is a good defense to an attachment for criminal, but not civil contempt that the contemnor acted in good faith upon advice of counsel." *In re Eskay*, 122 F.2d 819, 822 (3d Cir. 1941).[ii] "A mere violation of an injunction," "if in a good-faith belief that the order is being properly interpreted, and without any intention to disobey or set at naught the order of the court, is not a criminal contempt, even though actuated by a desire to find a lawful means of avoiding [what the order enjoins]." *Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf Binder Co*., 230 F. 120, 132 (6th Cir. 1915).

## C. Actual Knowledge of the Terms of the Order

The Government must prove, beyond a reasonable doubt, that the Defendant had actual knowledge of the terms of the Order. *United States v. Baker*, 641 F.2d 1311, 1315 (9th Cir. 1981); *Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 129 (2d Cir. 1979).

## III. Law Regarding Transportation of Illegal Aliens to ICE or BP

Section 2(D) of SB 1070 (A.R.S. § 11-1051(D)) has provided at all relevant times[4] that "[n]otwithstanding any other law, a law enforcement agency may securely transport an alien who the agency has received verification is unlawfully present in the United States and who is in the agency's custody to a federal facility in this state or to any other point of transfer into federal custody that is outside the jurisdiction of the law enforcement agency." Federal law has also provided at all relevant times that state law enforcement may "communicate with the [Department of Homeland Security, i.e. ICE or Border Patrol] regarding the immigration status of any individual, including reporting knowledge that a particular alien is

---

[4] Section 2(D) was enacted on April 23, 2010. It has been upheld in *Friendly House v. Whiting*, No. CV 10-1061-PHX-SRB (October 8, 2010); and *Sol v. Whiting*, CV-10-01061-PHX-SRB (September 4, 2015)(see especially footnote 16: "Because Section 2(D) can be interpreted to cover situations in which federal officials request state officials' assistance—a situation that does not implicate the constitutional concerns Plaintiffs identify ['the constitutional concerns mentioned in the *Arizona* opinion, including potential violations of Fourth Amendment']—the law is not facially preempted.")

6

not lawfully present in the United States"; and also that state law enforcement may "cooperate with the [Department of Homeland Security] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. §§ 1357(g)(10), 1373; *see also Arizona v. United States*, 567 U.S. 387, 410, 427 (June 25, 2012)(discussing the "cooperation" provisions of Section 1357(g))(majority opinion by Kennedy, J., joined by Roberts, C.J., and Ginsburg, Breyer, and Sotomayor, JJ.; Scalia, J., concurring in part and dissenting in part). Finally, the United States Border Patrol and ICE had actual legal authority at all relevant times under 8 U.S.C. §§ 1357(g)(10), 1373 to authorize and encourage state law enforcement to communicate with them with respect to illegal aliens that were apprehended during the course of lawful stops, and to instruct state law enforcement to detain and transport those persons. Once Border Patrol or ICE requests that an illegal alien be detained or transported, they gain "immediate technical custody" over the person as a matter of law—i.e., the detainment becomes "ICE's detainment." *Chung Young Chew v. Boyd*, 309 F.2d 857, 865 (9th Cir. 1962)(immigration officers gained "immediate technical custody" over illegal alien in custody of another law enforcement agency upon making "detainer" request).

## IV. Public Authority Defense

"The public authority defense is properly used when the defendant reasonably believed that a government agent authorized her to engage in illegal acts." *United States v. Bear*, 439 F.3d 565, 568 (9th Cir. 2006).[iii] The Ninth Circuit Criminal Jury Instruction on the Public Authority defense states that "[t]he defendant contends that if he committed the acts charged in the indictment, he did so at the request of a government agent. Government authorization of the defendant's acts legally excuses the crime charged. The defendant must prove by a preponderance of the evidence that he had a reasonable belief that he was acting as an authorized government agent to assist in law enforcement activity at the time of the offense charged in the indictment… If you find that the defendant has proved that he reasonably believed that he was acting as an authorized government agent as provided in this instruction, you must find the defendant not guilty." Ninth Circuit Manual of Model Criminal Jury Instructions, Instruction 6.11 (2010 Edition, last updated 6/2017)(alternative bracketing omitted, as inapplicable).

RESPECTFULLY SUBMITTED July 21, 2017.

| WILENCHIK & BARTNESS, P.C. | GOLDMAN & ZWILLINGER PLLC |
|---|---|
| */s/ Dennis and Jack Wilenchik* | */s/ Mark D. Goldman* |
| Dennis I. Wilenchik, Esq. | Mark D. Goldman, Esq. |
| John D. Wilenchik, Esq. | Vincent R. Mayr, Esq. |
| The Wilenchik & Bartness Building | Jeff S. Surdakowski, Esq. |
| 2810 North Third Street | 17851 North 85th Street, Suite 175 |
| Phoenix, Arizona 85004 | Scottsdale, AZ 85255 |
| admin@wb-law.com | docket@gzlawoffice.com |

*Attorneys for Defendant Joseph M. Arpaio*

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2017, I electronically transmitted the foregoing document to the Clerk of the Court through the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF registrants for this matter.

*/s/ Aileen De Los Angeles*

---

[i] Finding that statute which criminalized "nightwalking," or walking after hours, was void partly because such conduct is typically deemed innocent.

[ii] The Ninth Circuit distinguishes between "good faith reliance upon counsel's advice that what the defendant did was not a violation of the court's order," which is a valid defense to criminal contempt; and advice by counsel to disobey an "unambiguous" order of which the defendant was aware, which is not a defense, and "in such a case the attorney is also in contempt." *United States v. Snyder*, 428 F.2d 520, 523 (9th Cir. 1970); *United States v. Armstrong*, 781 F.2d 700, 706 (9th Cir. 1986).

[iii] Citing Ninth Circuit Manual of Model Criminal Jury Instructions, Instruction 6.10 (2003).