

WILENCHIK & BARTNESS
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone:  602-606-2810        Facsimile:  602-606-2811

Dennis I. Wilenchik, #005350
John D. Wilenchik, #029353
admin@wb-law.com

GOLDMAN &
ZWILLINGER
PLLC
ATTORNEYS AT LAW

Mark Goldman, #012156
Vincent R. Mayr, #013954
Jeff S. Surdakowski, #030988
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
Main: (480) 626-8483
Facsimile: (480) 502-7500
docket@gzlawoffice.com
*Attorneys for Defendant Joseph M. Arpaio*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                                   Plaintiff,<br><br>v.<br><br>Joseph M. Arpaio,<br><br>                                   Defendant. | Case No.: 2:16-cr-01012-SRB-1<br><br>**DEFENDANT'S RESPONSE TO MOTION FOR LEAVE BY *ORTEGA MELENDRES* PLAINTIFFS**<br><br>**(Assigned to the Honorable Susan R. Bolton)**<br><br>**(Oral Argument Requested)** |

Defendant hereby responds to the Motion for Leave to File "Amicus Curiae" Brief filed by "the *Ortega Melendres* Plaintiffs" (Doc. 233).

First, the Motion is untimely, being filed several days after the deadline for any response to Defendant's Motion for Vacatur. Defendant's counsel is already hard-pressed to address the numerous, gratuitous and politically-motivated "amicus briefs" filed by nonparties in this case. These filers appear to have deliberately waited until after the Government filed its response, and even after the Defendant filed its response to the other amicus filers. Defendant asks that the Motion be denied on these grounds alone, and otherwise responds as follows.

**1.  The Rule of Automatic Vacatur is an "Established Practice" and by no means "Extraordinary"**

The "*Ortega Melendres* Plaintiffs" groundlessly characterize the Defendant's request for vacatur as "extraordinary." In fact, the rule of automatic vacatur is an "established practice" in this Circuit and across the country. *Dilley v. Gunn*, 64 F.3d 1365, 1369 (9th Cir. 1995)("we have treated automatic vacatur as the 'established practice,' applying whenever mootness prevents appellate review"). The same principle applies when a criminal defendant dies before judgment or the completion of appeals: the entire proceeding is void *ab initio*. "Death pending appeal of a criminal conviction abates not only the appeal but all proceedings in the prosecution from its inception." *United States v. Oberlin*, 718 F.2d 894, 895 (9th Cir. 1983)(*citing Durham v. United States*, 401 U.S. 481, 483 (1971)). "In such a case, the appeal is dismissed and the cause remanded to the district court with instructions to vacate the judgment and to dismiss the indictment." *Id.*; *see also United States v. Bechtel*, 547 F.2d 1379 (9th Cir.1977). The conviction also cannot be used in any related civil litigation. *Id.* All of this is because "the interests of justice ordinarily require that [the defendant] not stand convicted without resolution of the merits of his appeal, which is an integral part of our system for finally adjudicating his guilt or innocence." *Id.* at 869 (*quoting Griffin v. Illinois*, 351 U.S. 12, 18 (1956), internal bracketing and quotation marks omitted). Far from being "extraordinary," this principle is

1

unanimously recognized and applied in criminal cases nationwide. *See e.g. United States v. Volpendesto*, 755 F.3d 448, 452 (7th Cir. 2014)("[b]ecause mootness occurs before the conviction can finally be confirmed, the longstanding and unanimous view of the lower federal courts is that the death of an appellant during the pendency of his appeal of right from a criminal conviction abates the entire course of the proceedings brought against him").

Further, Defendant's acceptance of a pardon absolutely does not acknowledge guilt. "[W]hen the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence." *Ex parte Garland*, 71 U.S. 333, 380 (1866). As the Supreme Court aptly put it in *Ex Parte Grossman*, pardons exist to afford relief from an "evident mistake in the operation or enforcement of the criminal law"—such as the deprivation of a jury trial in a criminal contempt case, which was specifically discussed in the last two paragraphs of that Opinion—just as much as pardons exist to afford relief from mere "undue harshness" in other cases. *Ex Parte Grossman*, 267 U.S. 87, 120 (1925). "A pardon in our days is not a private act of grace from an individual happening to possess power. It is a part of the Constitutional scheme." *Biddle v. Perovich*, 274 U.S. 480, 486 (1927). In *Biddle*, the United States Supreme Court found that an unconditional pardon (such as this was) does not even require the "acceptance" of the defendant in order to be effective, turning the President's pardon power into something even more in the nature of a power to "overrule" the judicial branch. *See Biddle*, 274 U.S. at 486 ("[j]ust as the original punishment would be imposed without regard to the prisoner's consent and in the teeth of his will, whether he liked it or not, the public welfare, not his consent determines what shall be done [when clemency is granted]…the convict's cansent [sic] is not required").[1] The

---

[1] A different rule, requiring acceptance or consent of the defendant, likely obtains for conditional pardons (*see United States v. Wilson,* cited and discussed briefly below); or "malicious" pardons that are rejected by the defendant (*see United States v. Burdick*, concerning a pardon that was rejected by the defendant newspaper editor because it was intended to strip him of his Fifth Amendment right against self-incrimination, so that he would be forced to testify)( cited and discussed briefly below).

defendant's pardon was a part of the Constitutional scheme which must be respected by the Court, in the same way that a mandate from the Court of Appeals, or a Congressional law, must also be respected and followed.

### 2.  A Pardon, and the Rule of Vacatur, are "The Rule of Law"

Amicus claims that granting vacatur, which the law expressly requires, would "gravely harm the principle of rule of law." The opposite is true. Under our Constitution, the "rule of law" is not something to be unilaterally invented and applied by district court judges; nor is it made by well-educated and well-paid lawyers. It is made by ordinary Americans, sitting on a jury. It is made by Congress. And it is made by the President, in the form of his power to pardon – an essential part of the "checks and balances" of the Constitution, *especially* when it comes to criminal contempt. *Grossman*, 267 U.S. 87, 122. Criminal contempt, as Justice Scalia warned, is the one criminal charge that is most susceptible to abuse. *See United Mine Workers of America v. Bagwell*, 512 U.S. 821, 831 (1994)(Scalia, J.); *see also Bloom v. State of Ill.*, 391 U.S. 194, 202 (1968)(criminal contempt "is an arbitrary power which is liable to abuse"). The Court "invents" the crime, by issuing an Order—making something that might otherwise not even appear to be a crime, into something that is suddenly criminal. It commands that the defendant be prosecuted, a role normally reserved for the executive branch. And then it decides the guilt of the accused, with the prosecution presenting the court's own case back to it—the "victim" of a crime deciding its own prosecution. In the absence of a jury, the court in a criminal contempt matter "assumes the roles of all three branches of government, summoning forth the prospect of the most tyrannical licentiousness." *Bagwell*, 512 U.S. at 831 (Scalia, J.). "Accordingly, in criminal contempt cases an even more compelling argument can be made than in ordinary criminal cases for providing a right to jury trial as a protection against the arbitrary exercise of official power." *Id.* The Court declined to grant a jury in this matter, even though

18 U.S.C. § 3691 guaranteed one.[2] And Defendant's only appeal would be to more judges, "victims" of the crime, who would not be guaranteed to treat him with any more impartiality. Under these circumstances, a Presidential pardon is the only check on the "tyranny" of the judicial branch, as Justice Scalia put it—the only guarantee of the "rule of law" by ordinary Americans, of ordinary Americans, and for ordinary Americans. And because they could not speak through a jury, they spoke through their President.

### 3. Amicus Deliberately Misquotes the Standard and Caselaw

Amicus deliberately misquotes the caselaw on vacatur to make it seem as if it is an extraordinary remedy that is rarely granted. The *U.S. Bancorp* case, which Amicus misleadingly cites for the proposition that a litigant has the "burden of showing equitable entitlement to the extraordinary remedy of vacatur," actually concerned a party who voluntarily settled their case, thereby clearly waiving the right to appeal; and the Supreme Court's actual, full quote was (albeit with internal citations omitted, italics added): "Mootness *by reason of settlement* does not justify vacatur of a federal civil judgment under review. Equitable principles have always been implicit in this Court's exercise of the vacatur power, and the principal equitable factor to which the Court has looked is whether the party seeking vacatur caused the mootness by voluntary action. Where *mootness results from settlement*, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the extraordinary equitable remedy of vacatur." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 18 (1994). In other words, the Supreme Court was stating that the remedy is "extraordinary" where a party voluntarily forfeits his legal remedy by settlement. The Ninth Circuit made this clear in *Dilley v. Gunn* (which Amicus also neglects to discuss, offering only a partial and misleading quotation):

*U.S. Bancorp* makes clear that the touchstone of vacatur is equity…[The Supreme Court] rejected the notion that automatic vacatur was the 'established practice'

---

[2] The allegations against Defendant also constituted offenses under 18 U.S.C.A. § 242, *inter alia*.

*whenever* mootness prevents appellate review of a lower court decision. [Emphasis original.] A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment. Similarly, a litigant should not be bound by an adverse unreviewed judgment when mootness results from unilateral action of the party who prevailed below. However, as *U.S. Bancorp* demonstrates, the equitable principles weighing in favor of vacatur in these situations cut the other direction where the appellant by his own act prevents appellate review of the adverse judgment. The denial of vacatur in such a case is merely one application of the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.

*Dilley v. Gunn*, 64 F.3d 1365, 1370 (9th Cir. 1995)(internal quotation marks, citations, and bracketing omitted). *U.S. Bancorp* stands for the proposition that "[t]he relevant inquiry is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Dilley*, 64 F.3d at 1371 (citing *Anderson v. Green*, 513 U.S. 557, 560 (1995)(stating that under *U.S. Bancorp*, the "pivotal" inquiry in determining whether to vacate the lower court's judgment is whether the appellant caused the mootness by voluntary action). The *Cammermeyer v. Perry* case (which Amicus cites for the proposition that "a court's decision to vacate a judgment 'is not to be made mechanically, but should be based on equitable considerations'") was likewise specifically referring to this exception, whereby "the party seeking relief from the judgment below caused the mootness by voluntary action." *Cammermeyer v. Perry*, 97 F.3d 1235, 1239 (9th Cir. 1996). Finally, while Amicus is correct that the Ninth Circuit observed in *United States v. Tapia-Marquez* that the Supreme Court has not yet had occasion to apply the rule in criminal cases, what Amicus omits to mention is that the Ninth Circuit then referred to possible "circumstances" in which vacatur might apply in a criminal case, and specifically cited the *Schaffer* case finding that vacatur is appropriate after a Presidential pardon. *United States v. Tapia-Marquez*, 361 F.3d 535, 538 n. 2 (9th Cir. 2004)(see footnote 2).

## 4. **Arpaio Did not "Actively Petition" for a Pardon**

As addressed in a footnote to Defendant's prior response to other Amicus filers,

5

1   Defendant did not "petition" for a pardon, much less "actively" petition for one, as Amicus

2   groundlessly alleges. (Nor is it proper for an Amicus filer to be attempting to present evidence

3   and factual allegations to the Court: "an amicus who argues facts should rarely be welcomed."

4   *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970).) After the President announced that he

5   would be pardoning the Defendant ("he's going to be just fine," and "I don't want to do it

6   [pardon him] tonight because I don't want to cause any controversy"), certain media reported

7   that the President was being advised by his counsel not to issue the pardon until after

8   sentencing. This prompted Defendant's counsel to send a letter to White House Counsel stating

9   that because the President had publicly announced an imminent pardon (and the Court was no

10  doubt aware of it), then the Court's knowledge of an imminent pardon could affect its

11  sentencing, and that delaying any pardon until after sentencing would be unwise. The President

12  had already announced the pardon, and Defendant did not ask for or demand it, even in that

13  letter. To construe this as Defendant "actively petition[ing]" for a pardon is absurd.

14      The Defendant's actual public comments prior to the pardon showed that if anything, he

15  did not want the President to issue a pardon. When interviewed on August 14th, just eleven days

16  before the pardon was issued (and following the President's public comments that he was

17  "seriously considering" granting a pardon), Defendant stated: "I would never ask him [the

18  President] for a pardon, especially if it causes heat. I don't want to do anything that would hurt

19  the president."[3] Defendant made similar comments a week after his conviction, in response to

20  questions from local media: "I'm not going to ask him." "I'm with him, pardon no pardon, and

21  not asking him."[4]

22

23

---

24  [3]   See   http://www.foxnews.com/politics/2017/08/14/trump-seriously-considering-pardon-for-

25  sheriff-joe-arpaio.html

26  [4] See http://www.azcentral.com/story/news/local/phoenix/2017/08/09/joe-arpaio-guilty-criminal-
    contempt-donald-trump-pardon/553049001/

Clearly, a Presidential pardon is not under the Defendant's voluntary control, and the Defendant never even asked for one. Even his "acceptance" of a pardon is irrelevant, in light of *Biddle v. Perovich*, 274 U.S. at 486, which found that a presidential grant of clemency is effective even without the defendant's consent.

And it would be fundamentally unfair for the courts to let Defendant Arpaio's conviction stand, but also to deny him the right to appeal it. When a defendant settles a case, he knowingly and voluntarily waives the right to appeal and to contest the findings against him; and so to let the judgment stand is proper. But when a defendant is pardoned, there is no such expectation or calculus on the part of the defendant, or voluntary forfeiture of his appellate rights; in fact, his only expectation is that his guilt will be "blotted out" completely, as the United States Supreme Court expressly stated is the effect of a pardon: "when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence." *Ex parte Garland*, 71 U.S. 333, 380 (1866). To hold that somehow the defendant, when he receives a pardon, is in fact agreeing that he is *guilty*, and knowingly and voluntarily forfeiting his rights to appeal his conviction as if he were settling the case, is completely untenable.

Amicus criticizes Defendant for citing "only one out-of-circuit case" on the effect of a pardon on a conviction before sentencing and appeals (*Schaffer*), but then Amicus fails to cite *any* cases on the effect of a pardon before sentencing and appeals. Further, Amicus deliberately neglects to mention that the Ninth Circuit referred to *Schaffer* as a possible example of vacatur in a criminal case. *See United States v. Tapia-Marquez*, 361 F.3d 535, 538 n. 2 (discussed *supra*). And as far as citing "only one out-of-circuit case" goes: Amicus cites only a Second Circuit case for its proposition that an "unsolicited pardon" must be "accepted" before it becomes effective, *Marino v. Immigration & Naturalization Serv., U.S. Dep't of Justice*, 537 F.2d 686, 692 (2d Cir. 1976), which actually concerned the acceptance of an "amnesty" granted by the Italian Government (to an Italian citizen), not the President of the United States. Further,

an actual reading of *Marino* reveals that the Second Circuit's motivation for ruling that the petitioner had to "accept" the Italian amnesty before it became effective is very similar to why Defendant argues that vacatur is necessary in this case—because otherwise, the defendant would still be considered convicted, but unable to appeal. "[T]he very amnesty which was designed to relieve [petitioner] of the stigma of his conviction would nail down as final a conviction which had not yet become final…It would be impossible thereafter for [the petitioner] to cleanse himself of that stigma…no matter how meritorious his appeal might have been. Such a result would be unfair and unwarranted." *Marino*, 537 F.2d at 693. The Second Circuit's solution to this problem was merely to find that his Italian "amnesty" never became effective. The solution in American courts is to vacate the conviction.

    *Marino* refers to a 1833 Supreme Court decision, *United States v. Wilson,*[5] which discussed the need for the defendant to accept a conditional pardon; and it also referenced a 1915 decision, *United States v. Burdick*, which found that the defendant could reject a "malicious" pardon—in that case, a pardon that was intended to strip the defendant, a newspaper editor, of his Fifth Amendment privilege against self-incrimination, so that he could be forced to testify about his confidential sources before a grand jury. But where a pardon is unconditional (such as the Defendant's was), and where it has no such "malicious" motives or effect, the Supreme Court has expressly held that the recipient cannot refuse it. *Biddle*, 274 U.S. at 486 (which is the Supreme Court's latest Opinion on pardons, and which found that an unconditional pardon which prevented the defendant's execution was effective without his consent, even despite his later opposition to it).

    **5.**   **Public policy supports vacatur**

    The *Melendres* plaintiffs have their civil lawsuit, which is still ongoing, and in which the Defendant is no longer even meaningfully involved, now that he is out of office. They have no

---

[5] *United States v. Wilson*, 32 U.S. 150 (1833).

actual continuing interest in his criminal prosecution; and their demand for conviction smacks of vindictiveness and spite.

Further, as the Court knows, Defendant was convicted for violating an Order in an "ambiguous" area of law (to quote the United States Supreme Court), i.e. of what constitutes "cooperation" under Section 287(g). Detaining illegal aliens for turnover to Homeland Security—which was and remains a "common practice" by law enforcement, and for which Defendant was convicted—is hardly the "warning to others" not to "harm…constitutional rights" that Amicus wants it to be. In fact, such a "warning" contradicts even this Court's own rulings on the subject, *Friendly House v. Whiting* and *Sol v. Whiting*.

The reality here, and the bottom line to all of this, is that our system of criminal justice is premised on lenity, and the defendant's presumption of innocence. That philosophy extends to defendants even following their conviction, before or during their appeal. A conviction that will never be confirmed by appeal, cannot stand. That is why the defendant's conviction must be overturned, and his case dismissed, when it is mooted before the end of his appeal (whether by death or by pardon)—because even at the appellate level, the system must always "err" on the side of innocence, not of guilt. It must always vacate a doubtful or unconfirmed conviction, rather than let it stand.

Finally, from a practical perspective, it would be fundamentally unfair to tell the defendant that he remains convicted, but that he cannot appeal it. It would be a denial of due process of the worst order—to finally determine a person's guilt, but at the same time prevent him from ever seeking to prove his innocence. It would be contrary to every notion, every principle, enshrined in the treatment of criminal defendants that is guaranteed under the United States Constitution. And it would be clearly contrary to the purpose and effect of an unconditional pardon, "so that in the eye of the law the offender is as innocent as if he had never committed the offence." *Garland*, 71 U.S. at 380.

## CONCLUSION

Fyodor Dostoyevsky once said that "[t]he degree of civilization in a society can be judged by entering its prisons." Likewise, the integrity of our courts should be judged not by how they treat defendants whom they believe are innocent, but by how they treat the defendants whom they believe are guilty, whom they accuse of "flagrant" contempt. The Court always sets its more powerful example when it follows the law to show mercy and integrity, than when it bucks the law to show pettiness or spite. And our entire system of criminal justice is premised on lenity and the presumption of innocence, not guilt. To honor these sacred Constitutional principles, and to follow the rule of law by honoring the President's pardon, the Court must vacate the Defendant's conviction and dismiss this matter, with prejudice.

**RESPECTFULLY SUBMITTED** September 14, 2017.

**WILENCHIK & BARTNESS, P.C.**          **GOLDMAN & ZWILLINGER PLLC**

*/s/ Dennis and Jack Wilenchik*          */s/ Mark D. Goldman*
Dennis I. Wilenchik, Esq.               Mark D. Goldman, Esq.
John D. Wilenchik, Esq.                 Vincent R. Mayr, Esq.
The Wilenchik & Bartness Building       Jeff S. Surdakowski, Esq.
2810 North Third Street                 17851 North 85th Street, Suite 175
Phoenix, Arizona 85004                  Scottsdale, AZ 85255
admin@wb-law.com                        docket@gzlawoffice.com

*Attorneys for Defendant Joseph M. Arpaio*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2017, I electronically transmitted the foregoing Notice to the Clerk of the Court through the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF registrants for this matter.

*/s/Christine M. Ferreira*