R. Bradley Miller (*pro hac vice*)
**GUTTMAN, BUSCHNER AND BROOKS PLLC**
2000 P. Street, N.W., Suite 300
Washington, D.C. 20036
Office: (202) 800-3001
Fax: (202) 827-0041
bmiller@gbblegal.com

Terry Goddard, No. 004557
Spencer G. Scharff, No. 028946
**GODDARD LAW OFFICE PLC**
502 W. Roosevelt Street
Phoenix, Arizona 85003
Office: (602) 258-5521
terry@goddardlawplc.com
scharff@goddardlawplc.com

*Counsel for Certain Members
of the Congress of the United States*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiffs,<br><br>v.<br><br>Joseph M. Arpaio<br><br>                    Defendant. | NO. CR-16-01012-001-PHX-SRB<br><br>**[PROPOSED] MEMORANDUM OF *AMICI CURIAE* CERTAIN MEMBERS OF CONGRESS IN OPPOSITION TO DEFENDANT'S MOTION FOR VACATUR AND DISMISSAL WITH PREJUDICE** |

**INTEREST OF THE *AMICI CURIAE***

The *amici curiae* are members of Congress. They are Representatives John Conyers, Jr.; Jerrold Nadler; Zoe Lofgren; Sheila Jackson Lee; Steve Cohen; Henry C. "Hank" Johnson, Jr.; Theodore Deutch; Karen Bass; Cedric L. Richmond; Luis V. Gutierrez; David N. Cicilline; Ted Lieu; Pramila Jayapal; Jackie Speier; Raúl M.

Grijalva; Joseph Crowley; Linda Sanchez; Bennie G. Thompson; Keith Ellison; Adriano Espaillat; Ro Khanna; Ruben Gallego; Norma J. Torres; Eleanor Holmes Norton; Jimmy Gomez; Dwight Evans; Juan Vargas; Nydia M. Velazquez; Jim Costa; Colleen Hanabusa; Frank Pallone, Jr.; Grace F. Napolitano; and Barbara Lee.

The *amici* have an interest in protecting the division of powers among the executive, legislative, and judicial branches of government set forth in the Constitution. The *amici* regard that division of government powers as essential to the preservation of liberty, as did the framers.[1]

The *amici* oppose Defendant Joseph M. Arpaio's Motion for Vacatur and Dismissal with Prejudice. The presidential pardon upon which that motion is based is an encroachment by the Executive on the independence of the Judiciary. The *amici* urge the Court to defend jealously against that encroachment as the framers intended.

The power to impose sanctions for contempt of court is an inherent power that is essential to the independence of the judiciary, just as the power to impose sanctions for contempt of Congress is an inherent power that is essential to the independence of the legislative branch, as the Supreme Court held in *Anderson v. Dunn*, 19 U.S. 204 (1821). Even without contempt of court statutes, the Court said, "that Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful

---

[1] *Amici* could offer as authority for that proposition any number of passages from *The Federalist Papers*, court decisions, speeches and writings of American leaders, learned treatises, and the like. This is a foundational principle of American democracy. "Power must never be trusted without a check." John Adams, in a letter to Thomas Jefferson, Feb. 2, 1816.

mandates….." *Id.* at 227. And each chamber of Congress necessarily has the same implied power "to guard itself from contempts, [rather than be exposed] to every indignity and interruption that rudeness, caprice, or even conspiracy, may mediate against it." *Id.* at 228.

A presidential pardon of contempt of court or of contempt of Congress is thus an encroachment on the independence of those co-equal branches of government. The exercise of the pardon power in the circumstances here was not to ameliorate an unduly harsh criminal punishment or to correct a mistake in the enforcement of the criminal law—the intended purpose of the power—but to deprive the judiciary of the means to vindicate the authority of the courts. The effect of the pardon is to subject the judiciary's authority to enforce prohibitory injunctions, even prohibitory injunctions issued in private litigation, to the approval of the executive.

The *amici* also have an interest in protecting the rights and remedies provided by legislation. The Arpaio pardon defeats the private right of action under 42 U.S.C. § 1983 for prohibitory injunctive relief from the deprivation of the rights, privileges, and immunities under color of State law.

**ARGUMENT**

**I.      THE POWER TO PUNISH ACTS OF DISOBEDIENCE TO COURT ORDERS IS ESSENTIAL TO THE INDEPENDENCE OF THE JUDICIARY.**

Sanctions for contempt can be imposed under civil or criminal procedures, and can be remedies for private litigants or purely punitive. Sanctions for contempt, as an

inherent power of the courts, predate contempt statutes. The law of contempt has evolved over the centuries, but it has always been clear that contempt powers are required

> to vindicate the jurisdiction and authority of courts to enforce orders and to punish acts of disobedience. For while it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it…[their] judgments and decrees would be only advisory.
>
> If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery.
>
> This power has always been uniformly held to be necessary to the protection of the court from insults and oppressions while in the ordinary exercise of its duties, and to enable it to enforce its judgments and orders necessary to the due administration of law and the protection of the rights of citizens.

*Gompers v. Buck Stove & Range Co.*, 221 U.S. 418, 450 (1911) (citation omitted).

**II.   THE PARDON POWER EXISTS TO ALLOW RELIEF AS A MATTER OF GRACE FROM UNDUE HARSHNESS OR EVIDENT MISTAKE IN THE ADMINISTRATION OF THE CRIMINAL LAW, NOT TO SUBJECT THE JUDICIARY TO SUPERVISION BY THE EXECUTIVE.**

The Supreme Court addressed the applicability of the pardon power to contempt of court in very different circumstances in *Ex Parte Grossman*, 267 U.S. 87 (1925).[2] There the defendant sold liquor to be consumed on his business premises in violation of Prohibition. In other words, the defendant ran a speakeasy. The trial court issued an

---

[2] The greater weight of legal authority before the *Grossman* decision was that neither contempt of court nor contempt of Congress is subject to the President's pardon power. *See, e.g.*, *The Laura*, 114 U.S. 411, 413 (1885) ("It may be conceded that, except in cases of impeachment and where fines are imposed by a co-ordinate department of government for contempt of its authority, the President, under the general, unqualified grant of power to pardon offences against the United States, may remit fines, penalties and forfeitures of every description…."). The Court in *Grossman* described that authority as obiter dictum or as views "stated merely in passing." 267 U.S. at 118

4

order that the defendant stop. Less than two months later, the defendant was caught selling liquor again. The trial court found the defendant guilty of contempt of court and sentenced him to imprisonment for one year and to a $1000 fine. The President thought that too harsh and reduced the sentence to the fine on the condition that the defendant pay the fine.

The trial court denied the President's power to pardon or commute contempt of court and committed the defendant to imprisonment. The Attorney General appointed special counsel to argue to uphold the imprisonment, but argued as *amicus* that the pardon was valid.

The Supreme Court upheld the pardon. The Court distinguished civil and criminal contempt:

> [I]t is not the fact of punishment but rather its character and purpose that makes the difference between the two kinds of contempts. For civil contempts, the punishment is remedial and for the benefit of the complainant, and a pardon cannot stop it. For criminal contempts, the sentence is punitive and in the public interest to vindicate the authority of the courts and to deter other like derelictions.

*Id.* at 111.

Criminal contempts, the Court held, were "Offences against the United States" subject to the President's power to pardon. "These contempts are infractions of the law, visited with punishment as such." *Id.* at 116. The pardon power

> exists to afford relief from undue harshness or evident mistake in the operation or enforcement of the criminal law. The administration of justice by the courts is not necessarily always wise or certainly considerate of circumstances which may properly mitigate guilt …. It is a check entrusted to the executive for special cases…in confidence that he will not abuse it.

*Id.* at 120–21.

**III. AN ABSOLUTE, UNQUALIFIED PRESIDENTIAL POWER TO PARDON WOULD BE AN IMPEDIMENT TO THE CONSTITUTIONAL DUTY OF THE JUDICIARY TO DO JUSTICE AND WOULD CONFLICT WITH THE FUNCTION OF THE COURTS.**

Any reading of *Grossman* as holding that the executive's power to pardon is absolute and unreviewable, or that contempt of court is just another crime that gives rise to no particular concern for the independence of the judiciary, is incompatible with later decisions on claims of absolute, unreviewable executive branch power. The executive branch is seldom bashful to assert such claims, which the courts properly regard skeptically.

The more recent decision perhaps most pertinent to the issues presented by the Arpaio pardon is *Young v. U.S. ex rel. Vuitton et Fils*, 481 U.S. 787 (1987). There the defendant sold counterfeit Vuitton and Gucci leather goods. The defendants consented to a permanent injunction in private litigation for trademark infringement. An undercover investigation five years later caught defendants still selling counterfeit leather goods in violation of the injunction. The court appointed private counsel to prosecute criminal contempt of court charges and a jury returned a guilty verdict. The defendants received sentences that ranged from six months to five years.

The defendants argued that criminal contempts "are essentially conventional crimes, prosecution of which may be initiated only by the Executive Branch." Only the United States Attorney's Office, the defendants argued, could bring a prosecution for criminal contempt. The Court held that the "power to punish for contempts is inherent in all courts…and may be regarded as settled law. It is essential to the administration of justice." *Id.* at 795 (block quotation and citation omitted). "The ability to punish

6

disobedience to judicial orders is regarded as essential to ensuring the Judiciary has a means to vindicate its own authority without complete dependence on other Branches." *Id*. at 796. The power to appoint private attorneys to prosecute contempt of court "satisfies the need for an independent means of self-protection." *Id.*

The Court thus had ready means to vindicate the Court's authority if the President had ordered federal prosecutors to drop the contempt of court charge against the Defendant, reportedly the President's initial plan from which Attorney General Jeff Sessions dissuaded him. But a full and unconditional presidential pardon also effectively deprives the Court of "the independent means of self-protection," and makes the Court dependent on the Executive. The decision in *Vuitton* is entirely consistent with other more recent decisions where claims of unlimited executive powers intrude on the powers of the judiciary or of Congress.

In *United States v. Nixon*, 418 U.S. 683 (1974), the President argued that the courts were without jurisdiction to consider "an intra-branch dispute" between the President and the Special Prosecutor and issue subpoenas that the Special Prosecutor sought and the President opposed. "Since the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case, it is contended that a President's decision is final in determining what evidence is to be used in a given criminal case." *Id.* at 693 (citations omitted). The Court held that "the fact that both parties are officers of the Executive Branch cannot be viewed as a barrier to justiciability," and "since the matter is one arising in the regular course of a federal criminal prosecution, it is within the traditional scope of Art. III power." *Id.* at 697.

7

The Court in *Nixon* also rejected the President's claim of "an absolute, unqualified Presidential privilege of immunity from judicial process under all circumstances." *Id*. at 706. The Court said that "a confrontation with other values arises" from that claim. *Id*. "The impediment that an absolute, unqualified privilege would place in the way of the primary constitutional duty of the Judicial Branch to do justice in criminal prosecutions would plainly conflict with the function of the Courts under Art. III." *Id.* at 707.

The court in *Committee on the Judiciary v. Miers*, 558 F. Supp. 2d 53 (D.D.C. 2008), rejected a similar claim that the President's removal power was beyond question by the other branches. The President argued that the House Judiciary Committee could not investigate the President's decision to fire nine U.S. Attorneys, allegedly because the U.S. Attorneys brought criminal prosecutions that hurt Republicans and failed to bring criminal prosecutions that would hurt Democrats, because "Congress had no authority to legislate and thus no corresponding right to investigate." *Id*. at 77. "[T]he Executive characterizes the Committee's investigation too narrowly," the court said: "It is not merely an investigation into the Executive's use of his removal power but rather a broader inquiry into whether improper partisan considerations have influenced prosecutorial discretion." *Id*.

As in *Nixon*, "a confrontation with other values arises" from the Arpaio pardon, a confrontation that did not arise from the pardon in *Grossman*. First, the defendant's business establishment in *Grossman* was called a "speakeasy" for a reason: the defendant tried to keep quiet his sale of liquor to avoid legal sanction. The defendant may not have respected Prohibition, but he did respect the authority of the court. The defendant paid a

8

stiff fine to avoid a prison sentence. Defendant Arpaio, in contrast, flouted the Court's earlier injunction. He said in one television interview that he would "never give in to control by the federal government." He basked in the national attention to his defiance. The Defendant remains entirely unrepentant still.

Second, and relatedly, the pardon here is an intentional usurpation of the Court's authority by the President. President Trump does not pretend that his pardon of the Defendant is based upon the considerations of grace that usually justify the exercise of the pardon power. The President said that the Defendant "was just doing his job" by his defiance of the court's injunction. In short, unlike the pardon in *Grossman*, the pardon here is not based upon "circumstances which may properly mitigate guilt," but is intended to defeat the Court's authority to punish disobedience to the Court's orders—"an independent means of self-protection"—and perhaps is even intended to endorse the Defendant's contention that he was a "sovereign sheriff" beyond the power of federal courts.

Third, trial courts no longer wield the despotic powers in criminal contempt proceedings that would justify the pardon as a necessary check against abuses by the judiciary. The Court in *Grossman* agreed that "[t]he power of a court to protect itself and its usefulness in punishing contemnors is of course necessary." 267 U.S. at 122. Contempt of court powers, however, were then "without many of the guarantees which the bill of rights offers to protect the individual against unjust conviction," most notably a disinterested judge. *Id*. The Court asked: "Is it unreasonable to provide for the

possibility that the personal element may sometimes enter into a summary judgment pronounced by a judge who thinks his authority is flouted or denied?" *Id*.

The procedure described by the Court in *Grossman*—a bench trial for criminal contempt before the judge whose order the defendant defied—needed reform, and the judiciary made that reform. *See In re Murchison*, 349 U.S. 133, 137 (1955) ("It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused as a result of his investigations.").

The Defendant openly defied an injunction issued by Judge G. Murray Snow in a civil case, *Melendres v. Arpaio*, and the matter was properly referred to a disinterested judge, Judge Susan R. Bolton, for trial of criminal contempt charges. This Court found beyond reasonable doubt that "Judge Snow issued a clear and definite order," and that the Defendant knowingly and willfully violated that order.

Again, President Trump did not pretend that his full and unconditional pardon of the Defendant was based upon any concern that this Court erred in that factual finding, and any criticism by President Trump of the procedural fairness of the Court's conduct of the trial was perfunctory.[3] The argument that the Defendant was unfairly denied a jury trial is politically contrived and legally flimsy, as this Court well knows. Rather,

---

[3]  In interviews with sympathetic media outlets, of course, counsel for the Defendant describes the trial as a modern version of the Star Chamber: the presiding judge is a "rogue, liberal judge" and the guilty verdict is "a finding that was so baseless and lacking in merit that the President of the United States had to step in and correct this injustice." *See* Jerome R. Corsi, *Federal Judge in Arpaio Case Prepares to Rule Trump Pardon Unconstitutional*, The New American, September 19, 2017 (*available at* https://www.thenewamerican.com/usnews/constitution/item/26941-federal-judge-in-arpaio-case-prepares-to-rule-trump-pardon-unconstitutional) (last visited September 26, 2017).

President Trump agreed with the Defendant that Judge Snow's injunction was not worthy of obedience.

If the Defendant questioned the validity of Judge Snow's civil injunction, then he was required to challenge the injunction through orderly judicial review, rather than ignore the injunction. If that was required of Dr. Martin Luther King, then that should be required of the Defendant as well. *See Walker v. City of Birmingham*, 388 U.S. 307 (1967). "[I]n the fair administration of justice no man can be judge of his own case…. [R]espect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom." *Id.* at 320–21.

### IV. THE ARPAIO PARDON INTERFERES WITH THIS COURT'S ENFORCEMENT OF THE RIGHTS OF PERSONS UNLAWFULLY DETAINED BY THE MARICOPA COUNTY SHERIFF'S OFFICE.

Most important, the pardon here denies the plaintiff class in *Melendres* the remedies allowed by statute for the deprivation of their constitutional rights. The defendant in *Grossman* violated public morality as then expressed by Prohibition, but did not affect the rights of any particular person. The injunction that the defendant violated there was issued in a government enforcement action. The pardon there of criminal contempt did not "interfere with the use of coercive measures to enforce a suitor's right," which was beyond the President's power. *Grossman*, 267 U.S. at 121.

Congress provided by statute that "any citizen of the United States or other person" injured by the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" may seek relief "in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. Relief in equity can include

mandatory and prohibitory injunctions. Mandatory injunctions require conduct, and prohibitory injunctions forbid conduct. Mandatory injunctions are enforceable through civil contempt, which allows very effective relief that is beyond the President's power to pardon. The effectiveness of prohibitory injunctions largely depends upon the ultimate threat of criminal contempt, however. In *Vuitton*, the defendant paid substantial monetary damages for infringement of Vuitton's and Gucci's trademarks. But the sale of bootleg leather goods as Vuitton or Gucci products was very profitable, and the defendant could and did treat those monetary damages as a cost of business. Criminal contempt for violation of the civil injunction was the only effective remedy for Vuitton and Gucci for infringement of their trademarks.

The plaintiff class in *Melendres* sought and secured an injunction that forbid the Defendant to detain persons on suspicion only of undocumented immigration status, which Judge Snow held deprived the persons detained of rights secured by the Constitution. Monetary damages from that deprivation are difficult to measure and otherwise inadequate. The Arpaio pardon effectively denies those persons the statutory remedies provided by Congress for the deprivation of rights secured by the Constitution.

**V.     IMPEACHMENT CANNOT BE THE ONLY SAFEGUARD AGAINST THE VERY REAL THREAT OF ENCROACHMENT BY THE PRESIDENT ON THE INDEPENDENCE OF THE JUDICIARY.**

The Court in *Grossman* regarded the possibility of "successive pardons of constantly recurring contempts in particular litigation" that "might deprive a court of power to enforce its orders" as "so improbable as to furnish but little basis for argument." 267 U.S. at 121. "Exceptional cases like this," the Court said, "if to be imagined at all,

would suggest a resort to impeachment rather than to a narrow and strained construction of the general powers of the President." *Id*.

Successive pardons for those who violate the law with the President's blessing is no longer hard to imagine at all. The remedy suggested by the Court in *Grossman*—impeachment—cannot be the only remedy for any encroachment by the Executive on the independence of the other co-equal branches.

## VI. THE APPOINTMENT OF PRIVATE COUNSEL WOULD SHARPEN THE PRESENTATION OF ISSUES AND HELP ILLUMINATE THE CONSTITUTIONAL QUESTIONS HERE.

The *amici* Members of Congress did not join the motion to appoint private counsel, but strongly urge the Court to grant the motion. The circumstances here are exactly the circumstances anticipated in *Vuitton*. The circumstances here are also very similar to the circumstances in *United States v. Windsor*, 133 S. Ct. 2675 (2013). There the President instructed the Department of Justice not to defend the constitutionality of the Defense of Marriage Act, but urged the Court to "provid[e] Congress a full and fair opportunity to participate in the litigation of these cases." *Id.* at 2684. The Court said that the "Executive's agreement with Windsor's legal argument raises the risk that instead of a real, earnest and vital controversy, the Court faces a friendly, non-adversary proceeding." *Id*. at 2687. The Court allowed the participation by Congress to assure "that concrete adverseness which sharpens the presentation of issues upon which the Court largely depends for illumination of difficult constitutional questions." *Id*. (citations and quotation marks omitted).

The appointment of private counsel, as well as consideration of arguments by *amici*, would assure the Court the concrete adverseness that will help illuminate the difficult—and important—constitutional questions presented by the pardon at issue here.

## CONCLUSION

For the foregoing reasons, the *amici* Members of Congress urge the Court to hold the President's pardon of Defendant Joseph M. Arpaio to be an invalid encroachment on the authority of the Judiciary, deny the pending motion to vacate the conviction of the Defendant for criminal contempt, and proceed to sentencing.

Dated September 27, 2017.   By: *s/ R. Bradley Miller (with permission)*

R. Bradley Miller
GUTTMAN, BUSCHNER AND BROOKS PLLC

Terry Goddard
Spencer G. Scharff
GODDARD LAW OFFICE PLC

Counsel for Certain Members
of the Congress of the United States

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2017, I electronically transmitted the above document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Spencer G. Scharff*