UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **CR16-01012-01-PHX-SRB(BSB)** |
| vs. | ) Phoenix, Arizona |
| | ) October 4, 2017 |
| **Joseph M. Arpaio**, | ) 10:01 a.m. |
| | ) |
| Defendant. | ) |
| _____ | ) |

BEFORE:  THE HONORABLE SUSAN R. BOLTON, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MOTION HEARING

Official Court Reporter:
Elizabeth A. Lemke, RDR, CRR, CPE
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 34
Phoenix, Arizona  85003-2150
(602) 322-7247

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1    **APPEARANCES:**

2    **For the Government:**

3                U.S. DEPT OF JUSTICE - PUBLIC INTEGRITY SECTION
                By:  **John D. Keller, Esq.**
4                10th & Constitution Avenue
                Washington, DC  20530
5
                U.S. DEPT OF JUSTICE - PUBLIC INTEGRITY SECTION
6                By:  **Victor R. Salgado, Esq.**
                     **Simon J. Cataldo, Esq.**
7                     **James Pearce, Esq.**
                1400 New York Ave. NW, 12th Floor
8                Washington, DC  20005

9    **For the Defendant Joseph M. Arpaio:**

10               WILENCHIK & BARTNESS
                By:  **John D. Wilenchik, Esq.**
11               2810 North Third Street
                Phoenix, AZ  85004
12
                GOLDMAN & ZWILLINGER PLLC
13               By:  **Mark D. Goldman, Esq.**
                     **Jeff S. Surdakowski, Esq.**
14                    **Vincent R. Mayr, Esq.**
                17851 North 85th Street, Suite 175
15               Scottsdale, AZ  85255

16

17

18

19

20

21

22

23

24

25

```
 1              P R O C E E D I N G S

 2       (Called to the order of court at 10:01 a.m.)

 3            THE COURT:  Good morning.  Please sit down.

 4            THE CLERK:  Criminal case 16-1020, United States of

 5   America v. Joseph M Arpaio.  Time set for hearing regarding

 6   Defendant's Motion for Vacatur and Dismissal With Prejudice.

 7            Counsel, please announce your presence for the

 8   record.

 9            MR. KELLER:  John Keller on behalf of the government,

10   along with my colleagues Victor Salgado, Simon Cataldo and

11   James Pearce.

12            MR. JOHN WILENCHIK:  Thank you.  John Wilenchik on

13   behalf of the Defendant, along with Mark Goldman, Jeff

14   Surdakowski and Vince Mayr.

15            THE COURT:  Since the time this hearing has been set,

16   I have received several motions for leave to file briefs as

17   Amici Curiae.  They are:

18            Erwin Chemerinski, Michael Tigar and Jane Tigar's

19   Motion for Leave to File Brief of Amici Curiae;

20            Motion For Leave To File Brief Of Amici Curiae

21   Martin Redish, Free Speech For People and Coalition To

22   Preserve, Protect and Defend In Opposition To Motion of

23   Defendant Joseph Arpaio For Vacatur And Dismissal With

24   Prejudice;

25            Motion of Roderick and Solange MacArthur Justice
```

1   Center For Leave To File Amicus Curiae Brief Regarding Arpaio

2   Pardon;

3            Certain Members Of The Congress Of The United States

4   Motion For Leave to Participate as Amici Curiae;

5            The Protect Democracy Project, Inc.'s Motion For

6   Leave to Participate As Amicus Curiae;

7            Motion For Leave To File Brief Of Amici Curiae The

8   Ortega Melendres Plaintiffs;

9            And a Motion For Leave To File Supplemental Brief Of

10  Amici Curiae In Support Of Appointment Of A Private Attorney

11  To Prosecute Defendant's Criminal Contempt.

12           Responses have been filed to these motions.

13           In the exercise of the Court's discretion, the

14  motions to file briefs as amici curiae are granted.

15           The motion in support of a private attorney to

16  prosecute Defendant's criminal contempt is denied.

17           All of these amici briefs, with the exception of the

18  one filed by the *Melendres* plaintiffs, argue that the

19  Presidential pardon of Defendant Arpaio is void and

20  unconstitutional.

21           All of the briefs attempt to distinguish the pardon

22  of criminal contempt upheld by the United States Supreme Court

23  in *In Re: Grossman* from the pardon in this case.

24           Additionally, one of the briefs argues that the

25  pardon is invalid because it purports to pardon Defendant

1   Arpaio for acts that have not yet taken place, that is, future

2   potential violations by him of the *Melendres* injunction.

3         I have concluded that the pardon is valid and pardons

4   Defendant Arpaio for his criminal contempt of the preliminary

5   injunction issued in the *Melendres* civil rights case.

6         I have concluded that I am bound by the Supreme

7   Court's decision in *Grossman* that a criminal contempt of a

8   court order is an offense against the United States.

9         I will comment briefly on some of the arguments made

10  in the amici briefs, specifically concerning the argument that

11  the pardon is invalid because it purports to pardon future

12  conduct.

13        It is evident to me that one cannot be pardoned for a

14  criminal act not yet committed.  Whether the pardon's language

15  can be interpreted to attempt to do this is an issue not yet

16  ripe for consideration.

17        My concern here is only with the pardon of the

18  criminal contempt already committed.  It is highly speculative

19  to suggest that there is a realistic possibility that

20  Defendant Arpaio will violate an injunction in the *Melendres*

21  case in the future.

22        Were that to occur, the court considering that

23  violation will be the one to decide whether the pardon

24  attempted to pardon future acts and the invalidity of such a

25  pardon.

1        The Court also rejects the arguments that this pardon

2   eviscerates the rights of the private litigants in *Melendres*.

3   The private litigants in *Melendres* have obtained a permanent

4   injunction and other relief in their civil case which remains

5   fully enforceable by the court.  This pardon does not

6   interfere with the rights of those private litigants.

7        This pardon in this criminal contempt case has the

8   effect of allowing Defendant Arpaio to escape punishment for

9   his willful violation of the preliminary injunction in

10  *Melendres*.

11       I agree that the criminal contempt pardoned here is

12  for a willful violation of a preliminary injunction that

13  affected constitutional rights, a more significant issue than

14  the willful violation of the injunction against selling

15  alcohol in *In Re:  Grossman*.

16       But this difference in the significance of the

17  conduct enjoined is not a basis for me to refuse to follow the

18  Supreme Court's holding.

19       The Court finds the pardon valid and that it requires

20  this action for criminal contempt be dismissed with prejudice.

21       The question I will hear argument on today is whether

22  the pardon requires this Court to enter any other orders than

23  the order of dismissal.

24       Who wishes to address that issue on behalf of the

25  Defendant?

CR16-01012-01-PHX-SRB    MOTION HEARING    10-4-17

1          MR. JOHN WILENCHIK:  Thank you, Your Honor.  I will.

2          THE COURT:  All right.  You may proceed.

3          MR. JOHN WILENCHIK:  Your Honor, this issue has been

4    thoroughly briefed and we appreciate the questions that the

5    Court has already had on this.

6          I think the best answer to those questions are all

7    found in the *Schaffer* case that we've cited.  What's at issue

8    here is the legal question of the Defendant's guilt.  And the

9    significance of that is for future legal questions in other

10   cases, in particular, for the issue of collateral estoppel.

11   Because this case is moot, because there will never be an

12   appeal, as a matter of law the mootness results in a vacatur

13   of the Court's verdict.

14         This is on basic principles of fairness, because

15   otherwise, we would never have the opportunity to appeal that

16   verdict.  We will never have the opportunity to litigate it.

17         In recognition of that, the Court should vacate it.

18         THE COURT:  Let me interrupt you for just a second.

19         MR. JOHN WILENCHIK:  Please.

20         THE COURT:  Your motion did not ask that I just

21   vacate the guilty verdict that was contained within my

22   findings and conclusions.

23         MR. JOHN WILENCHIK:  Correct.

24         THE COURT:  The motion asked that I vacate all orders

25   and rulings in the case of which there are potentially dozens.

1    MR. JOHN WILENCHIK:  Correct.  The issue there is

2  that that is strong language in *Schaffer* and the remedy that

3  the DC Circuit issued in *Schaffer*, which was to vacate, quote,

4  all opinions, judgments, and verdicts.

5    And there's even language earlier in this same

6  opinion that talks about vacating all decisions of the court.

7    So we're, again, drawing on the remedy that was

8  issued in *Schaffer*.  We're not even going beyond that case.

9  There has been a question raised whether we're asking for

10  expungement here.  We're not asking for expungement.  We're

11  just asking for the same remedy in the *Schaffer* case.

12    The *Schaffer* case said that the remedy was to vacate

13  the disputed panel decision and all underlying judgments,

14  verdicts, and decisions -- and decisions of the district

15  court.

16    That's the reason why we have asked for that broader

17  remedy as the Court has characterized it.

18    THE COURT:  You may continue.

19    MR. JOHN WILENCHIK:  There's been a lot of other

20  arguments raised by amici as to why this vacation ought to be

21  granted.  I'm not inclined to address those unless the Court

22  is inclined to listen to them.

23    THE COURT:  Well, I believe that the only party that

24  made significant argument in that respect was the brief filed

25  by the *Melendres* plaintiffs.

1          I think that it was discussed briefly and as an

2    alternative argument in the other briefs, but not as fully

3    discussed as the *Melendres* plaintiffs.

4          MR. JOHN WILENCHIK:  I agree with that, Your Honor,

5    and we've filed a very thorough brief in response to the

6    *Ortega* and *Melendres* amicus brief.

7          THE COURT:  And may I note that specifically for the

8    record, because there was a response filed by you to the

9    motions to file amici briefs that did not address the

10   substance of the arguments that I just rejected.

11         You did file, while entitled, an objection to the

12   motion to file the brief, you did, in fact, file your

13   substantive response to the *Melendres* plaintiffs' amici brief

14   which the Court has just accepted.

15         MR. JOHN WILENCHIK:  Again, the posture of this case,

16   I'll answer the Court's question like this.

17         We made an attempt to address some of the substance,

18   but given the uncertainty about whether the Court would even

19   allow those amicus briefs be filed, I can't say we addressed

20   it in the complete and thorough manner that we would like to,

21   you know, knowing that the Court is considering those kind of

22   arguments.

23         But here today, talking about this, we did file a

24   good response, those issues, in the *Ortega* and *Melendres*

25   brief.  And the argument raised there essentially is that the

1   Ninth Circuit has recognized that this principle of vacatur

2   has one exception, which is, if the defendant knowingly and

3   voluntarily forfeits his right to appeal.

4        That's clearly not the case here.  In fact, *Schaffer*,

5   again, addresses that.  It says this is not a case when a

6   President issues a pardon where the defendant knowingly

7   forfeits some right.

8        This is about the unpredictable grace, to use the

9   words of the *Schaffer* court, of the Presidential pardon.  In

10  fact, in *Schaffer*, concerning Archibald Schaffer, Archie

11  Schaffer had actually applied for the clemency.  He had

12  actually formally applied for a pardon.

13       Defendant Arpaio did not.  In fact, if anything, his

14  comments before the pardon was issued indicated he was not

15  going to ask for one.  So there could be a clear example even

16  more so than in the *Schaffer* case of the, quote, unpredictable

17  grace of a Presidential pardon.

18       This is not the kind of thing that where the

19  defendant, even when a pardon was issued, the defendant is not

20  voluntarily forfeiting some right.  He has no control of the

21  process.  This is entirely distinguishable from that one line

22  of cases that are considered an exception to vacatur where a

23  defendant voluntarily forfeits the right, i.e. by settlement

24  or by plea agreement.

25       So that was the one issue I spotted in replying to

1    the *Melendres* brief that I thought was worth addressing.  Then

2    you have the argument that somehow by accepting the pardon,

3    that's his voluntary forfeiture.  We pointed to the -- I

4    believe it's the latest United States Supreme Court case about

5    the effect of pardons which said that when a pardon is full

6    and unconditional, you don't have to accept it.  It's

7    immediately effective.

8            Again, commenting more on the nature of something

9    that's the President's unpredictable grace, it's not something

10   we've caused.  It's not like we're settling the case when the

11   President pardons us -- pardons the Defendant.

12           Therefore, this principle of vacatur fully applies.

13   I think it applies more so here in a criminal case.  The

14   *Ortega* and *Melendres* defendants -- not defendants -- amicus

15   filers did raise an issue there of -- they said that while

16   the -- that this is not going to apply to the United States

17   Supreme Court to a criminal case.

18           What they neglected to mention is that there is a

19   Ninth Circuit case that said in the footnote -- well, it said

20   in the body of the opinion -- and we've cited in our briefs, I

21   believe it was the *Tapia* case -- it said in the opinion that

22   this principle -- we could perceive circumstances where the

23   principle of vacatur would apply in a criminal case.  And then

24   they footnoted to *Schaffer* which is a very clear indication

25   that the Ninth Circuit believes that vacatur can and should

1   apply when a Presidential pardon is issued before the end of

2   the appeals.

3        THE COURT:  But vacatur, typically, is as to the

4   judgment of conviction which has not happened in this case.

5        MR. JOHN WILENCHIK:  The reason -- I wouldn't say

6   "typically."  The government did a good job in its brief of

7   pointing out that this whole principle is very, very similar

8   to the rule of abatement.  The rule of abatement is just the

9   term when the defendant dies before the end of the case as

10  opposed to the pardon.

11       And the rule of abatement is equal, if not more so

12  applied, before a judgment is entered.  And, again, we have

13  that language in *Schaffer* talking about making all decisions,

14  not just judgments, not just verdicts, all decisions of the

15  district court.

16       And the reason this is done, I think, applies even

17  more so where there is no final judgment yet.  The reason is

18  because the appeals have not ended.  In fact, in *Schaffer* the

19  court even made a comment about how, you know, if you're --

20  even if the Court of Appeals had decided, even if we are in

21  the petition for hearing stage, it says, and regardless of

22  whether this is the initial review process of the court, it's

23  the initial hearing stage.  There should still be this vacatur

24  because the process has not ended.

25       So when the process hasn't even begun yet, which is

1   where we are here, where there's not a judgment even, those

2   principles apply even more forcefully to say because the

3   defendant would never have the right to appeals and it has to

4   be vacated, therefore, because the legal question was guilt or

5   innocence will never be determined.

6          THE COURT:  Okay.  Anything else?

7          MR. JOHN WILENCHIK:  Your Honor, we may have

8   rebuttal, if necessary, but I just would add to that that this

9   really is a matter of basic fairness and it's a matter of the

10  legal question of his guilt.

11         A pardon -- the *Schaffer* court says a pardon does not

12  decide guilty or innocence.  And by vacating the conviction,

13  you're not deciding guilt or innocence.  You are just

14  recognizing that the legal question of his guilty for

15  collateral estoppel purposes or any other purpose has never

16  been decided and never will be.

17         Thank you.

18         THE COURT:  Thank you.  Mr. Keller, will you be

19  addressing this on behalf of the government?

20         MR. KELLER:  Yes, Your Honor.

21         THE COURT:  You may proceed.

22         MR. KELLER:  The Presidential pardon removes the

23  legal consequences of the finding of guilt here.  The

24  authorities are unanimous on that point.  The circuits to have

25  addressed it, the Seventh Circuit in *Birkin*, the Third Circuit

1   in *Noonan*, the DC Circuit in *Schaffer*, and Corpus Juris

2   Secundum, the section of that that the court and the parties

3   have cited to, are all unanimous that the effect of the pardon

4   is to negate the consequences, the legal consequences of the

5   court's finding of guilt.

6        And so the next question is:  What procedural steps

7   are appropriate in light of that fact, in light of the pardon?

8        And as the Court has already indicated today and

9   indicated in its order directing supplemental briefing,

10  dismissal of the order to show cause is appropriate in light

11  of the pardon.  Dismissal of the charging document in this

12  case clearly reflects the fact that this prosecution is over,

13  that the Defendant will never be held accountable for his

14  criminal contempt of Judge Snow's preliminary injunction.

15       Similarly, an order of vacatur is appropriate as to

16  the Court's finding of guilt to clearly reflect that there are

17  no legal consequences going forward of that finding.

18       There will be no sentencing.  There will be no

19  judgment.  And that finding should not be relied upon by

20  future litigants or future courts for any legal significance.

21       And, really, I would say because of the operation of

22  the pardon -- because the pardon negates the legal

23  consequences of the finding of guilt, this is less about

24  equity and more about administration and good housekeeping.

25       So an order of vacatur establishes on the court's

1   docket as a judicial directive, not -- not just putting the

2   pardon on the docket, because obviously, the pardon doesn't

3   come from the judiciary.

4         An order of vacatur establishes clearly for the

5   record that this legal finding made by the court has no legal

6   significance going forward, but it doesn't change the evidence

7   that was presented in this case and it doesn't limit future

8   parties, historians, litigants' ability to rely on that same

9   evidence to establish the conduct that occurred.

10        THE COURT:  When you refer to the "order of vacatur,"

11  you are asking the Court only to vacate its guilty verdict and

12  not any other orders or rulings in the case; is that accurate?

13        MR. KELLER:  I think that is the most important order

14  for the Court to vacate.

15        I will say that this line of logic, this reasoning,

16  would apply to any other legal rulings that the Court made

17  that the Defendant is not going to be able to challenge that

18  could potentially be raised in some future litigation.

19        For example, the Court's ruling that the Defendant in

20  his personal capacity had no attorney-client privilege with

21  Tim Casey.  That is a ruling that could have some legal

22  significance in another hearing or in another case and that

23  will never be challenged on appeal.

24        And so, although the government is primarily

25  concerned with the findings of fact finding the Defendant

1    guilty, I think the same reasoning would apply to the Court's

2    other legal findings, legal conclusions, rulings in this case.

3          Again, on the --

4          THE COURT:  How about the ones that favored the

5    Defendant?

6          MR. KELLER:  Again, Your Honor, I believe it wouldn't

7    matter which way the ruling came out.  I think just the fact

8    that there is a legal determination out there in the record

9    that could be relevant to some collateral litigation means

10   that those rulings should be vacated so that it's clear that

11   they have no legal effect going forward.

12         THE COURT:  Why shouldn't I just allow if someone

13   ever attempts to use one of these rulings and claimed that it

14   was final and law of the case to make that argument then?

15         MR. KELLER:  You certainly -- you certainly could,

16   Your Honor.

17         Obviously, there are a variety of options well within

18   the Court's discretion.  But I think the judicial interests of

19   finality and predictability are served by a simple order of

20   vacatur here which just establishes for the record that these

21   rulings that will never be reviewed on appeal do not have

22   legal force going forward.

23         THE COURT:  Anything else?

24         MR. KELLER:  No, Your Honor.

25         THE COURT:  Thank you.

1      Mr. Wilenchik, anything else?

2      MR. JOHN WILENCHIK:  Yes, Your Honor.

3      The answer to Your Honor's last question, which is,

4  why not -- I'll use a colloquial phrase here -- why not, you

5  know, pass the ball, why not allow a future court to make that

6  determination, the answer is because we've asked for it here.

7  We've specifically asked for a vacatur.

8      And, again, the rule is very established that the

9  Court is obligated to do that.  This issue, "Why not leave it

10  to a future court," I mean, that's something that can be

11  brought up on any issue in any case and we don't believe

12  that's appropriate.  We believe there is firm,

13  well-established practice, as the Ninth Circuit has referred

14  to it, a vacatur when mootness occurs.

15      And if we do not, again, we have asked for that.  If

16  that's not granted by the Court --

17      THE COURT:  But the orders I've seen, for example, in

18  the case of the death of an individual while a criminal

19  conviction was on appeal, the orders order that the verdict --

20  or, I'm sorry -- that the judgment of conviction be vacated

21  and that the indictment be dismissed with prejudice and

22  doesn't go beyond that.

23      It doesn't -- it doesn't tell me to do anything with

24  the jury's verdict or with any other rulings in the case and

25  why would this be different?

1     MR. JOHN WILENCHIK:  The question is why isn't it the

2   same?  Again, *Schaffer* is saying it's the same.  It

3   specifically in the second paragraph of *Schaffer*, all

4   decisions of the district court, where it's a verdict, where

5   it's an evidentiary decision, the issue is the same.

6     We have asked for that.  We'll never have the chance

7   to appeal it.  And even beyond this, to become some kind of

8   issue in a future court is, again, a burden on the Defendant

9   to have to relitigate this when he's asked for it now and the

10  case law clearly compels it, a vacatur of all decisions of the

11  district court.

12     THE COURT:  Isn't that as highly speculative a

13  proposition as the one that I rejected about a future contempt

14  of the *Melendres* injunction?

15     MR. JOHN WILENCHIK:  It's not speculative at all,

16  Your Honor, inasmuch as the significance of any decision of

17  this Court is not speculative.  We're not going to say it's

18  speculative when the Court convicts somebody or issues a

19  verdict or issues any ruling on anything in any case.

20     THE COURT:  No.  Speculative that there will be a

21  future litigation where issues that the Court decided here

22  would be attempted to be used to bind the Defendant -- bind

23  Mr. Arpaio whether it be civil or criminal.

24     It just -- I'm having a hard time imagining the

25  situation, just the same way I was having a hard time

1   imagining a future alleged contempt of the *Melendres*

2   injunction.

3        MR. JOHN WILENCHIK:  Well, let me put it this way.

4        The Sheriff has been named in numerous civil lawsuits

5   and currently-pending civil lawsuits, including Section 1983

6   lawsuits.  The Court mentioned earlier that it believes this

7   was a decision about the Sheriff doing something that affected

8   constitutional rights.  That is exactly the basis for a 1983

9   lawsuit, which already, they're too numerous to count or to

10  mention.

11       THE COURT:  No.  I said the preliminary injunction in

12  the *Melendres* case was an injunction that affected

13  constitutional rights.  I didn't say anything I ruled here

14  affected constitutional rights.

15       That's what the preliminary injunction was trying to

16  do and the permanent injunction as well in that civil case.

17       MR. JOHN WILENCHIK:  The answer to the Court's

18  question is that it is for purposes of civil lawsuits, as well

19  as in a future sentencing of a criminal lawsuit, which, given

20  the Sheriff is 85, I can understand that being viewed as

21  somewhat a speculative issue.

22       But there are many currently-pending, including in

23  the district court here, civil lawsuits involving the Sheriff

24  where any one of these issues related to Melendres there could

25  be an attempt to bring that lawsuit on collateral estoppel

1  grounds to say that either he was found -- any number of

2  things in this case, whether it's the privilege issue, you

3  know, to attempt to use his communications with Tim Casey in

4  this case for whatever purpose.

5          It's far from speculative, given that there are civil

6  lawsuits out there and they're all seeking to show the same

7  thing, whether even in a slightly different context or really

8  different context or a very different context that the

9  Sheriff's Office deprived constitutional rights.

10          It's for purposes of that kind of litigation which

11  is, again, far from speculative that we seek what, according

12  to the DC Circuit, we believe we're entitled to and have

13  requested, which is a vacatur of all decisions of this Court.

14          THE COURT:  Thank you very much.

15          It is ordered that this criminal contempt action is

16  dismissed with prejudice.

17          It's further ordered taking under advisement whether

18  the Court will enter any further orders beyond dismissal with

19  prejudice.

20          Is there anything else that the Court needs to

21  address today, Mr. Keller?

22          MR. KELLER:  No, Your Honor.

23          THE COURT:  Mr. Wilenchik?  Mr. Wilenchik?

24          MR. JOHN WILENCHIK:  Your Honor, I believe my

25  co-counsel Mark Goldman may have something.

1        THE COURT:  Well, I'm going to get to him after you

2   answer my question.  Do you have anything else?

3        MR. JOHN WILENCHIK:  I have nothing further.

4        THE COURT:  Mr. Goldman, do you have anything

5   further.

6        MR. GOLDMAN:  Good morning, Your Honor.

7        I have a couple of questions for the Court.

8        First question is:  Under what legal principle or

9   rule of criminal procedure or any other reasoning did the

10  Court use in order to grant the motions from all of these

11  parties or individuals filing amicus briefs with the court?

12       In other words, as a matter of law, why are 30

13  Congressmen, Democrat Congressmen, allowed to file a brief in

14  a criminal action in federal court?

15       THE COURT:  Because the filing -- the granting or

16  refusal to grant a motion to file an amicus brief is committed

17  to the sound discretion of the court.

18       I exercised my discretion and allowed the filing of

19  the briefs and then rejected the arguments that they made

20  therein to void the pardon.

21       MR. GOLDMAN:  I understand that, but just to provide

22  guidance for me in the future, because I have never seen

23  anything like this before and probably people in the courtroom

24  haven't either and notwithstanding that the Court has told me

25  just now that it's within the sole discretion of the Court,

1    under what --

2              THE COURT:  I said "sound."

3              MR. GOLDMAN:  Pardon?

4              THE COURT:  "Sound discretion" of the Court.

5              MR. GOLDMAN:  "Sound discretion" of the Court.

6              Excuse me, Your Honor.

7              In connection with that discretion, what was the

8    Court's reasoning to exercise its sound discretion to accept

9    these amicus briefs?  There were many of them and the

10   defendant was required to review them, respond to them,

11   consider them.

12             And under what circumstances are nonparties allowed

13   to file briefs in connection with a criminal action which, to

14   my understanding, was between a prosecutor and the defendant.

15             THE COURT:  Is that your only other question, Mr.

16   Goldman?

17             MR. GOLDMAN:  No, Your Honor.

18             THE COURT:  What other questions.  Go ahead and tell

19   me your other question as well.

20             MR. GOLDMAN:  Yeah.  Is the Court going to consider

21   sanctions against the parties and the individuals filing those

22   briefs with the Court?

23             And if so, I would like to argue as to why we're

24   entitled to -- we should be entitled to attorneys' fees to

25   have to respond to them and why those are sanctionable briefs

1    that were filed with the Court --

2         THE COURT:  If you --

3         MR. GOLDMAN:  -- without merit.

4         THE COURT:  If you wish to file such a motion, I will

5    consider it upon its filing and full briefing, but will not

6    comment on it today, nor will I give any further explanation

7    in response to your questions concerning the exercise of my

8    discretion.

9         MR. GOLDMAN:  Okay.  Thank you, Your Honor.

10        THE COURT:  You're welcome.

11        Court is adjourned.

12     (Proceedings adjourned at 10:31 a.m.)

13                              *  *  *

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          C E R T I F I C A T E

3

4              I, ELIZABETH A. LEMKE, do hereby certify that I am

5    duly appointed and qualified to act as Official Court Reporter

6    for the United States District Court for the District of

7    Arizona.

8              I FURTHER CERTIFY that the foregoing pages constitute

9    a full, true, and accurate transcript of all of that portion

10   of the proceedings contained herein, had in the above-entitled

11   cause on the date specified therein, and that said transcript

12   was prepared under my direction and control.

13             DATED at Phoenix, Arizona, this 4th day of October,

14   2017.

15

16

17

18

19                          s/Elizabeth A. Lemke
                            ELIZABETH A. LEMKE, RDR, CRR, CPE
20

21

22

23

24

25